15791

PILOT LIFE INS. CO. v. CUDD

(36 S. E. (2d), 860)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, Counsel for Appellant,

*Messrs. Osborne, Butler & Moore,* of Spartanburg, and *Smith, Wharton & Jordon,* of Greensboro, N. C., Counsel for Respondent,

8

December 29, 1945.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court.

This action was commenced in the Spartanburg County Common Pleas Court in March, 1944, by the service of summons and complaint. Plaintiff seeks to recover on the ground of alleged mistake, as alleged in the complaint, the sum of $1,013.36, paid to defendant as beneficiary under a policy on the life of her nephew and foster son, Lewis Edward Cudd, of which the sum of $1,000.00 was death benefit and $13.36 was premium refund.

Defendant answered, admitting the payment, denying mistake, and alleging that the payment was voluntary and was in the nature of a compromise settlement by plaintiff, as set forth in the answer.

The cause came on for trial on January 16, 1945, before Honorable William H. Grimball, presiding Circuit Judge, and a jury.

At the conclusion of all the evidence, motion was made for judgment in favor of each party. After argument his Honor directed a verdict in plaintiff's favor for $1,013.36. Later during the term, his Honor filed an order granting judgment for plaintiff accordingly, and judgment has been duly entered in favor of plaintiff thereon.

In due time defendant served notice of intention to appeal to the Supreme Court from the rulings, orders, decrees, and judgments of the presiding Judge and the cause now comes before this Court on the transcript of record and exceptions which for all practical purposes raise the following issues:

(1) Was such payment a material mistake of fact or error of judgment on the part of the company?

(2) Was such payment a voluntary one?

(3) Was such payment a compromise settlement by plaintiff?

The respondent, Pilot Life Insurance Company, issued its policy, dated April 12, 1936, for $1,000.00 on the life of Lewis Edward Cudd, naming the insured's aunt and adopted mother as beneficiary; on or about November 18, 1942, the insured sailed from Ceylon as a member of the Merchant Marine aboard the American Export Lines vessel, *Swaokla*; on January 16, 1943, Elizabeth Blackwell Cudd who was married to the insured in April, 1942, received the following letter from the War Shipping Administration:

"WAR SHIPPING ADMINISTRATION

99 John Street

New York, N. Y.

January 15th, 1943

Mrs. Elizabeth Cudd

111 West 16th Str.

New York City

Re: SA—Lewis E. Cudd.

Dear Madam:

This letter will advise you that the above-named member of the crew of the indicated vessel has been reported missing as a result of enemy action.

There was war risk insurance effective upon his life. This office is in possession of documentary evidence that you were designated as the beneficiary of this insurance. In order to facilitate the payment thereof, if and when it is determined to be due and payable, a questionaire is herewith enclosed for your completion and return to this office with the documents checked on page 5 thereof. A certified copy of an

English translation should, if necessary, accompany the documents requested.

Your prompt attention to this matter will be appreciated.

Yours very truly,

(s) E. A. Bloomquist
Chief Adjuster
Division of Wartime Insurance"

On January 21, 1943, she received the following telegram from the Navy Department:

"The Navy Department deeply regrets to inform you that your husband, Lewis Edward Cudd, is missing and presumed lost following action in the performance of his duty and in the service of his country. The Coast Guard appreciates your great anxiety and will furnish you further information promptly when received. To prevent possible aid to our enemies please do not divulge the name of his ship—

Vice-Admiral R. R. Waesche, Commandant,
U. S. Coast Guard."

On February 9, 1943, the Maritime War Emergency Board issued the following Certificate of Presumptive Death:

"Maritime War Emergency Board
Washington, D. C.
Certificate of Presumptive Death
Form A

I hereby certify that the Maritime War Emergency Board has found that Lewis Edward Cudd with the rating of 2nd Cook and Baker is presumed to have died on or about November 28, 1942, as a result of a cause specified in the applicable Decisions of the Maritime War Emergency Board; and that under date of February 9, 1943, the Maritime Emergency Board duly made and entered its Order declaring said person presumptively dead in accordance with the provisions of its applicable Decisions and authorized the

Secretary of the Board to issue a Certificate of Presumptive Death of said person.

(s) Erich Nielsen,

Dated May 8, 1943                                  Secretary"

At the request of appellant the American Export Lines wrote her under date of February 26, 1943, as follows:

"Your letter of February 10th has been referred to the writer for answer. We are extremely sorry that we must report that there is very little information which we can give you in respect to the above mentioned vessel.

"Your son signed the articles of this vessel in the capacity of Second Cook and Baker. The vessel left Colombo, Ceylon, about November 18th and has not been heard from since. As she was overdue, the U. S. Coast Guard sent notices to the next of kin. Mr. Cudd gave as his next of kin at the time he signed the articles his wife, Elizabeth, of 111 West 16th Street, New York City.

"We wish we were in a position to advise you something more definite, but under the circumstances, and owing to the lack of information, it is impossible for us to do so.

"We have asked the Maritime War Emergency Board to forward to us an individual certificate of presumptive death and upon receipt of same we will have it photostated, forwarding the original and the photostat to Mrs. Cudd in order to enable her to collect whatever insurance Mr. Cudd might have carried."

Note: The letter is captioned "M. V. Sawokla" and is signed by the Manager of Claims and Insurance Division under the following: "The United States of America War Shipping Administration, American Export Lines, Inc., Agents."

Some time during the Spring of 1943, appellant communicated this information to the local agent of the respondent and he in turn gave such information as he had to the home office who under date of April 8, 1943, wrote American Export, Inc., advising of the existence of the policy in question and that respondent had been advised by appellant that

the insured had been missing since November, 1942, and made request for "Assistance to us in establishing proofs of death of this person or of determining his present status", as a result of which respondent received the following reply:

"Letter to plaintiff from American Export Lines, Inc., New York, N. Y., dated April 13, 1943, as follows:

"We acknowledge receipt of your letter of April 8 in respect to your above caption.

"We wish to advise that Lewis E. Cudd was Second Cook and Baker on the M. W. Sawokla, which vessel is overdue and presumably lost, in accordance with advices received from the Navy Department. We secured from the Maritime War Emergency Board in Washington, D. C., an Individual Certificate of Presumptive Death, the original of which was forwarded to Mrs. Cudd with photostatic copies thereof so that she could use the latter in the collection of any outstanding personal insurance her husband might have carried. We presume that Mrs. Cudd has sent to you a photostatic copy of the certificate; but in the event she has not done so and has used all her copies for other insurance, we will be glad to send you a photostatic copy upon request.

"If we can be of any further assistance to Mrs. Cudd in collecting the outstanding life insurance with your company, please let us know."

The local agent inquired of the beneficiary whether or not she had received a Certificate of Presumptive Death and learned it was in the possession of the wife, thereupon respondent communicated with the Maritime War Emergency Board stating that it had been advised of the death of the insured and requested "a copy of the original Certificate of Presumptive Death" and received same under date of May 8, 1943, which was based on the original order of the Board dated February 9, 1943, together with their letter advising "We believe this will be sufficient for you to pay the beneficiary the amount of the policy carried by you on the deceased." As a result of this death, claims were signed and

filed by the appellant. Respondent then issued its check for $1,013.36 covering the face amount of the policy plus a premium payment of $13.36 which had been paid after the date of presumptive death. This check was delivered to the beneficiary who endorsed it and received payment therefor, June 7, 1943, respondent having at the time of delivery of the check taken up the original policy.

On August 20, 1943, the U. S. Coast Guard wrote the wife, Mrs. Elizabeth Cudd; said letter being signed by Lieutenant of the Coast Guard, title "Chief, Merchant Marine Personnel Records and Welfare Section" as follows:

"You are advised that this office is in receipt of an official report from the Prisoner of War Information Bureau, through the International Red Cross, that your husband, Lewis Edward Cudd, is a prisoner of War of Japan. He is interned in the Hakodate Prisoner of War Camp located on Hokkaido Island, Japan.

"All prisoner of war communications are subject to censorship; it is, therefore, suggested that all such communications deal only with personal matters. To facilitate clearance in the Far East, communication should be either typed or hand-printed in capital letters and the envelope containing any communication to your husband should be addressed as follows:

Postage Free

Civilian Internee
Mr. Lewis Edward Cudd
American Civilian Internee Held by Japan in Hakodate Camp,
Det. 1, Hokkaido Island, Japan
c/o Japanese Red Cross, Tokyo, Japan
Via New York, New York"

On October 8, 1945, respondent received from the Maritime War Emergency Board a certificate correcting the Certificate of Presumptive Death. Thereupon respondent's agent called upon the appellant and informed her of same and asked that she refund the money and reinstate the pol-

icy, no definite answer being given, respondent wrote and asked that this be done. Later attorneys for respondent visited the beneficiary for the purpose of getting a restoration of the status which has been refused by the appellant.

That the insured is alive and back in the United States at this time is undisputed.

This case was tried as an equity case and from this there is no appeal; therefore, it will be so considered by this Court.

"It is a firmly established general rule that money paid to another under the influence of a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money, which would not have been paid if it had been known to the payor that the fact was otherwise, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. The ground on which the rule rests is that money paid through misapprehension of facts belongs, in equity and good conscience to the person who paid it."

Both parties to this action had been advised that the insured had sailed from Ceylon and that his ship and all aboard had been unheard from and were presumed lost as a result of enemy action. Both parties exhausted their sources of information and all accepted the death of the insured as a fact. The U. S. Government also thought and so certified as a result of which appellant filed her claim and accepted the payment of the policy by respondent. It is obvious that both parties accepted as a fact that the insured had died shortly after sailing from Ceylon. There is no evidence of fraud, therefore, the question resolves itself into whether or not there was a mutual mistake. Appellant contends that there was no mutual mistake but rather a mistake or error of judgment on the part of the insurer. That settlement was made under the realization of an uncertainty and that the settlement was a compromise of a doubtful liability.

All of the facts available to one of the parties was available to, and known by, both and their reactions thereto were the same. The acceptance of the death of the insured as a fact was a mutual mistake of fact equally concurred in by both parties. The whole situation having arisen because of the acceptance by the parties as a fact that the insured came to his death shortly after he sailed from Ceylon, when such fact did not exist. To follow appellant's line of argument would be to allow the beneficiary to be enriched to the amount of $1,013.36 for which the essential prerequisite was the death of the insured when in fact he is still alive. A mistake of fact having existed the proposition is elementary that repayment to the insurers could be compelled: *Masonic Life Assn. v. Crandall,* 41 N. Y. S., 497, 11 L. R. A. (N. S.), 234.

In *Riegel v. American Life Ins. Co.,* 19 L. R. A., 166, 11 L. R. A., 857, we find the reverse of the position of the parties in this case. The plaintiff-beneficiary held a policy for $6,000.00 on the life of a debtor, Leisenring, who had not been heard from for about thirteen years. The beneficiary was paying premiums on this policy in an annual amount of $153.90, which premiums were burdensome to her and an arrangement was worked out whereby she surrendered the $6,000.00 policy and accepted a new policy, paid up, for $2,500.00 and was thereupon relieved from the payment of premiums. This, of course, was based upon the assumption of fact by both parties that the insured was alive. A short time later it was discovered that Leisenring, the insured, had died some time prior to the arrangements between the bneficiary and the insurer, and thereupon the beneficiary brought action against the company for recovery on the original policy of $6,000.00. The insurer there defended very much upon the grounds that appellant here contends for and filed a demurrer, contending that there was a compromise settlement based upon a doubtful fact. The Circuit Judge sustained the demurrer and dismissed the action, holding that "Where both parties treat upon the basis of the fact

being doubtful, and the transaction shows that both parties took the risk of the doubt, equity will not interfere, but will leave the parties where they were." This order was reversed on appeal by the Supreme Court of Pennsylvania which said:

"The case presented on these facts was that of a contract entered into under the influence of a mutual mistake, and a claim for relief from such contract. The mistake was in relation to the fact of Leisenring's death. Both parties evidently supposed, and acted on the supposition, that he was alive, and that the annual premiums upon his life, which had become burdensome to Mrs. Riegel must be continued indefinitely, until his death should take place.

"At the time she made it (the contract of settlement) she was already relieved from the burdensome premiums, and the entire amount of the policy was honestly due her from the Company. What was the effect of the mistake upon her? Simply to take from her the difference between the two policies and give her absolutely nothing for it. * * * The Company parted with nothing. She secured nothing. The whole transaction was a mistake, and if the decree of the court below stands, the result will be to take $3,500.00 from Mrs. Riegel, and give it to the Insurance Company."

After the case was tried on its merits and the lower Court had held that the beneficiary was not entitled to relief, the Supreme Court reversed that Order and held that the original policy of $6,000.00 should be reinstated and that amount paid to the beneficiary. In discussing the right of the beneficiary to relief because the parties had proceeded upon the mistaken assumption that the insured was alive, when in fact he was dead, the Court quoted portions of its opinion on the first appeal. The Court points out that the Circuit Judge, on the hearing on the demurrer, had treated the arrangement as a compromise, but that it did not partake of a compromise because "both parties to the transaction were acting, in respect thereto, on the basis that Leisenring

was alive," and the Court says, with respect to such a situation:

"The general rule is that an act done or a contract made under a mistake of a material fact is voidable and relievable in equity. * * * It makes no difference in application of the principle that the subject-matter of the contract be known to both parties to be liable to a contingency which may destroy it immediately; for, if the contingency has, unknown to the parties, already happened, the contract will be avoided as founded on a mutual mistake of a matter constituting the basis of the contract. * * *

"It cannot be doubted that in exchanging the old for the new policy both parties acted on the basis that Leisenring was then alive. Their every act in the transaction was predicated on that as an assumed fact. * * * If the exchange was not made on the assumption by both parties that Leisenring was then alive, the company stultified itself by issuing a paid-up policy on the life of one who was then in his grave; and the plaintiff was guilty of the supreme folly of paying $3,500.00 for exemption from a liability which, by the previous death of Leisenring, had *ipso facto* ceased * * * she and the company were both at that time ignorant of the fact that the life on which the original risk was taken had previously dropped. * * * The central fact underlying the transaction, and to which every circumstance connected therewith clearly points, was the assumption by both parties that Leisenring was then in full life."

The logic of this case is inescapable and simply by reversing the position of the parties very appropriate to the case now before us.

In the case of *Duncan v. McCormick County*, 192 S. C., 216, 6 S. E. (2d), 265, the administratrix brought an action against McCormick County for execution fees which the deceased treasurer was entitled to but had paid into the County general fund. The county attempted to defend on the grounds that he had voluntarily paid these moneys out without com-

pulsion and that he was estopped to demand them of the County and had waived his right to recover them. In that case it was said by this Court:

"The principle that whenever one has money in his hands belonging to another which in equity and good conscience he ought to pay over to that other an action will lie to recover it, is derived from the civil law and is founded in natural justice. Perhaps a statement of this doctrine more nearly applicable to the case at bar is the following from 41 C. J., 41, 42: 'When one has received money from a third person through some *mistake* or fraud by law or authority, which, but for the mistake or fraud, would have vested the right to the money in plaintiff, plaintiff may recover such money in an action for money had and received'."

This principle was also recognized in *Glenn v. Shannon,* 12 S. C., 570; *Bragg v. Thompson,* 19 S. C., 572.

Appellant argues strenuously and at length that what occurred in the payment of the face of the policy was voluntary and made in compromise, and, therefore, is not the subject of rescission.

"That cannot be said with propriety to be voluntarily done, where a formal assent thereto is induced by mistake * * *. As to facts material to control the operation of the will therein any more than where such formal assent is extorted by the application of a force which fetters and obstructs its free working." *Kenneth v. S. C. Railway Co.,* 15 Rich. L., 284; 98 Am. Dec., 382.

A compromise as shown by the principal authority, cited by appellant (*Taylor v. Insurance Company,* 196 S. C., 195, 12 S. E. (2d), 708) involves the essential element of a dispute or a controversy. The Taylor settlement was upheld because there was a bona fide basis for dispute between the parties as to whether the insured had committed suicide. But here there was no dispute, nor claim for double indemnity nor controversy between the parties. Both parties had substantially the same information and proceeded upon the same mistake of fact.

Appellant does not argue the question of whether or not the Court erred by impressing a trust upon "Any bonds, money or other property into which defendant had invested the moneys paid her by plaintiff", therefore, under the rules of this Court it is deemed abandoned and the Court intimates no opinion thereon.

This Court is of the opinion that all exceptions should be dismissed and it is so ordered. Judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.