1148

BORG WARNER ACCEPTANCE CORPORATION, Respondent v. Brad D. DARBY, Donald L. Ross and L. L. Sweatman, d/b/a Music Mart, a Partnership, and Brad D. Darby, Donald L. Ross and L. L. Sweatman, Individually, Defendants, of whom L. L. Sweatman is the Appellant. Appeal of L. L. SWEATMAN.

(372 S. E. (2d) 99)

Court of Appeals

*Francis T. Draine*, Columbia, *for appellant.*

*Hammond A. Beale*, Columbia, and *Frederick I. Hall, III*, Lexington, *for respondent.*

Heard Jan. 20, 1988.

Decided May 9, 1988.

BELL, Judge:

This is a breach of contract action. Borg Warner Acceptance Corporation commenced suit against Brad D. Darby, Donald L. Ross, L. L. Sweatman, and their Music Mart partnership seeking damages for breach of contract plus interest, costs, and attorney fees. Ross and Sweatman answered the complaint, denying any indebtedness to Borg Warner. Darby failed to answer and was adjudged in default. Following a nonjury trial, Borg Warner received judgment against all the defendants. Sweatman appeals. We affirm.

In 1978, Ross and Darby formed a partnership, known as Music Mart, for the purpose of retailing pianos and organs. At that time they opened a store in Orangeburg and one in Irmo. The inventory for both stores was financed by Borg Warner through a floor plan financing agreement. To secure repayment of the purchase money, Borg Warner had Ross and Darby execute a security agreement in its favor covering inventory, equipment, and other tangible and intangible property.

In July, 1983, Ross and Darby formed a partnership with Sweatman for the purpose of opening a Music Mart store in Charleston. The partnership agreement states the three men entered into "an equal partnership . . ." and further provides that "[e]ach partner is to share equally in all profits and assets and losses and liabilities. . . ."

The inventory at the Charleston Music Mart was also financed by Borg Warner. Along with the financing agreement, a separate security agreement and guaranty were executed.

The security agreement names "MUSIC MART, A PARTNERSHIP, ROSS, DONALD L., A PARTNER & DARBY, BRAD D., A PARTNER" as the "Debtor." The Guaranty lists "Music Mart" as the principal obligor. Darby signed the security agreement as a partner on behalf of Music Mart. Sweatman signed the security agreement and the guaranty as a witness to Darby's signatures.

In November, 1984, Sweatman notified Borg Warner that the Charleston store was going out of business and that Darby was going to move the merchandise to the Irmo store. On November 15, 1984, Borg Warner conducted an inventory at the Charleston store.

In late 1984 or early 1985, the three partners closed the Charleston store and moved the inventory to the Irmo store. On January 10-11, 1985, Borg Warner conducted a follow up inventory at the Irmo store. At that time, all of the inventory from the Charleston store was accounted for.

In February, 1985, it was discovered, through a monthly inventory of the Irmo store, that some of the merchandise originally located at the Charleston store was unaccounted for. Darby explained to Borg Warner that the missing merchandise was at the home of Phil Burgess, the former manager of the Charleston store. Borg Warner, with the aid of Sweatman, conducted a search for Phil Burgess to no avail. The merchandise was never recovered.

## I.

Sweatman argues that his obligation under the Charleston financing agreement was extinguished when Borg Warner acquiesced in the transfer of the merchandise from the Charleston store to the Irmo store.

When a partner incurs a liability on the partnership's behalf, in the ordinary course of business, the partnership is bound by that liability, unless the partner had no authority to incur the particular liability and the person with whom he was dealing had knowledge of the fact that he had no such authority. Section 33-41-310(1), Code of Laws of South Carolina, 1976; See *Buffkin v. Strickland*, 280 S. C. 343, 312 S. E. (2d) 579 (Ct. App. 1984). Each partner is jointly and severally liable for any liability incurred by the partnership. Section 33-41-370, Code of Laws of South Carolina, 1976.

A security interest is an interest in personal property which secures payment of an obligation. Section 36-1-201(37), Code of Laws of South Carolina, 1976; *Chadron Energy Corp. v. First National Bank of Omaha*, 221 Neb. 590, 379 N. W. (2d) 742 (1986). Although a security interest cannot exist without an obligation, an obligation can exist without a security interest.[1] Thus, even if collateral becomes unavailable for satisfaction of the debt it secures, the debt is still enforceable as the personal obligation of the debtor. *See Rogers v. Ward*, 90 Mass. (8 Allen) 387 (1864); *Turney v. Goldberg's Loan Office*, 135 Okl. 147, 274 P. 464 (1928).

When Borg Warner financed the purchase of inventory for the Charleston Music Mart, Music Mart became liable to repay Borg Warner. The fact that the Charleston Music Mart later relinquished possession of the missing inventory did not affect the enforceability of this obligation. Sweatman concedes that he, as a partner, was liable for any obligations incurred by the Charleston Music Mart. Thus, Sweatman is liable for the obligation incurred by the Charleston Music Mart when it financed the purchase of the missing inventory under the floor plan financing agreement.

Sweatman claims that the floor plan financing agreement was not an extension of credit for the purchase of inventory, but a straight consignment of goods for sale. We reject this claim.

The trial judge found the parties entered into a financing agreement. Sweatman's exceptions and brief do not challenge this finding. Accordingly, he is bound by it on appeal. *See McCulough v. Urquhart*, 248 S. C. 348, 149 S. E. (2d) 909 (1966).

Moreover, all of the evidence with respect to the floor plan agreement indicates the transaction was an extension of credit. Edward E. Reynolds, the branch manager at Borg

---

[1] *See Chadron Energy Corp. v. First National Bank of Omaha, supra* (if underlying obligation ceases to exist so does interest securing it); *cf. Black-Well v. Blackwell*, 289 S. C. 470, 346 S. E. (2d) 731 (Ct. App. 1986) (mortgage cannot exist without debt); *Glidden Coatings & Resins v. Suitt Construction Co., Inc.*, 290 S. C. 240, 349 S. E. (2d) 89 (Ct. App. 1986) (mechanics' lien cannot exist without debt); Section 36-9-504(2), Code of Laws of South Carolina, 1976 (a debtor is liable for any deficiency remaining after the disposition of the collateral).

Warner's Charleston branch, testified that Borg Warner was in the business of "inventory financing or floor planning for various retailers." He also testified that Borg Warner paid the manufacturers for the missing goods on behalf of the Charleston Music Mart. Ross acknowledged that, when he entered the floor plan agreement, he expected the Charleston partnership would have to pay back any money it borrowed under the agreement. The security agreement for the Charleston store speaks in terms of "extensions of credit" to finance the acquisition of goods. Two U. C. C. Notification letters relating to the Charleston store state that Borg Warner has or expects to acquire a purchase money security interest in the inventory of the "debtor." The guaranty agreement refers to the Charleston Music Mart as the "Debtor" and acknowledges "extensions of credit" by Borg Warner. This is ample evidence to show the agreement was an extension of credit creating a debtor-creditor relationship between the Charleston partners and Borg Warner.

## II.

Sweatman also argues that the trial judge erred in refusing to bar Borg Warner's suit on the doctrine of laches.

Laches is an affirmative defense which must be pleaded in one's answer. Rule 8(c), S. C. R. Civ. P. Sweatman did not plead laches and there is nothing on the record which shows that he ever placed the issue of laches before the trial judge. Thus, this issue is not properly before this Court. *Grego v. South Carolina National Bank*, 283 S. C. 546, 324 S. E. (2d) 94 (Ct. App. 1984).

## III.

Finally, Sweatman excepts to the trial judge's denial of his post trial motions. He claims the trial judge's order is not supported by salient findings of fact or conclusions of law.

Rule 52(c), S. C. R. Civ. P. instructs a court in an action tried without a jury to "find the facts specially and state separately its conclusions of law thereon...." This requirement is merely directory and provides no basis for invalidating a judgment. *See Pawleys Island Civic Association v.*

*Johnson,* 292 S. C. 208, 355 S. E. (2d) 541 (Ct. App. 1986) (interpreting Section 15-35-110, Code of Laws of South Carolina, 1976).

For the above stated reasons, the judgment of the trial court is affirmed.

SANDERS, C. J., and GARDNER, J., concur.

