479 S.E.2d 524

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,**

v.

**The COMMERCIAL BANK, Respondent.**

No. 2602.

Court of Appeals of South Carolina.

Submitted Oct. 8, 1996.

Decided Dec. 9, 1996.

Perry H. Gravely, of The Gravely Law Firm, Pickens, for appellant.

R. Lawton McIntosh, of McIntosh, Sherard & Sullivan, Anderson, for respondent.

HOWARD, Judge:

This is a declaratory judgment action brought by Nationwide Mutual Insurance Company (Nationwide) to determine if Commercial Bank (Bank), as lienholder, is entitled to recover for the destruction of a 1990 Ford truck owned by Clarence W. Brown (Brown) and insured under a Nationwide automobile policy providing collision and comprehensive coverage. The trial court found coverage was afforded to the Bank because (1) the contract was ambiguous and should be construed in favor of coverage; and (2) the Bank was an innocent co-insured. We reverse.[1]

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide the case without oral argument pursuant to Rule 215, SCACR.

## I. Facts

On or around May 15, 1992, Brown purchased a Nationwide insurance policy providing collision coverage for his 1990 truck. Commercial Bank, which had refinanced the truck, was listed as a lienholder. On January 23, 1993, Brown's truck rolled down an embankment, and was later destroyed by fire. Brown filed a claim for coverage under the Nationwide policy. The Bank also filed a claim for payment to the extent of its lien.

After an investigation, Nationwide determined Brown's truck was intentionally destroyed and denied both claims based on Brown's arson. The Bank does not dispute Nationwide's conclusion that Brown intentionally destroyed the truck. However, the Bank asserts it is an innocent co-insured, and is still entitled to payment based on the policy language and its status.

The trial court found in favor of coverage on two grounds. Specifically, the trial court found the policy key definitions included the Bank as an insured, by virtue of which it elevated the Bank to a status of "co-insured", rather than "loss-payee." The court also concluded the policy language in the applicable endorsement is ambiguous because the exclusion of coverage for fraud of the insured can be interpreted as applying only to fraud in the procurement of the policy, rather than to fraud of the insured occurring during the policy.

## II. Standard of Review

In an action at law, tried without a jury, the trial court's findings of fact will not be disturbed on appeal unless found to be without evidence which reasonably supports the judge's findings. *Townes Assocs. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

## III. Applicable Law

The following language in the Loss Payable Clause Endorsement of the policy, pertinent to this issue, reads as follows:

This endorsement applies to the Comprehensive and Collision coverages provided by this policy. It protects the lienholder named in the policy Declarations.

Payment for loss will be made according to the interest of the policyholder and lienholder. . . .

The lienholder's interest will be protected, except from fraud or omissions by the policyholder or the policyholder's representative.

■■■ Nationwide contends the Bank's interest is clearly voided by Brown's fraudulent act. We agree.

Insurance policies are subject to the general rules of contract construction. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). An insurer's obligation under a policy of insurance is defined by the terms of the policy and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 390 S.E.2d 471 (Ct.App.1990). In the absence of an ambiguity, the terms of the policy must be interpreted and enforced according to their plain and ordinary meaning. *Id.* If the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. v. Homestead Indus.*, 318 S.C. 231, 456 S.E.2d 912 (1995).

The loss payable clause contained in the policy at issue provides for payment of a lienholder's loss, except for "[f]raud or omissions by the policyholder." There is nothing confusing about this language. No words indicate an intention to limit the time when the insured must commit the fraud, or under what circumstances, in order for payment to be denied to the lienholder. No ambiguity is created by the use of the term "omission" in conjunction with the word "fraud." An omission may occur during the formation of the contract, or it can occur at any stage which requires that the insured do something material to the contract which the insured omits to do. Thus, use of the term "fraud or omission" cannot reasonably be interpreted as limiting the fraudulent conduct to actions by the insured in the procurement of the policy.

Fraud has been defined as "conduct . . . intended to cheat and deceive the insurer." *Nabors v. South Carolina Farm Bureau Mut. Ins Co.*, 273 S.C. 126, 129, 255 S.E.2d 337, 338 (1979), *overruled on other grounds by Johnson v. South State Ins. Co.*, 288 S.C. 239, 341 S.E.2d 793 (1986). The deliberate

destruction of the insured property by staged accident or arson is, without question, within this definition. The record clearly supports the appellant's contention and the trial court's unspecified finding that Brown intentionally destroyed the vehicle by a staged accident and subsequent fire, and thus committed fraud within the terms of the insurance contract.

■ The circuit court also concluded the Bank was not a loss-payee, but was instead an innocent co-insured. Our supreme court has addressed the limited rights of a lienholder, such as the Bank, under the "loss-payee" provisions of an insurance policy. In *Rawl v. American Central Ins. Co.*, 94 S.C. 299, 77 S.E. 1013 (1913), the court found:

> There can be no doubt that under a policy like this a mortgagee or other person named as the payee, as his interest may appear, holds his protection under the policy subject to having it defeated by any act or omission of the assured which, under the policy, produces a forfeiture. Under such a policy it is the owner's, not the mortgagee's, interest that is insured, and the mortgagee must stand or fall on the performance or breach of his contract.

*Id.*, 94 S.C. at 301, 77 S.E. at 1013.

An "open mortgage" or "loss payable" clause is "a simple provision that the loss shall be payable to the mortgagee as his interest may appear." *Walker v. Queen Ins. Co.*, 136 S.C. 144, 164, 134 S.E. 263, 270 (1926). It is distinguished from the "standard form" which contains additional language providing that the coverage for the mortgagee "shall not be invalidated by certain specific acts of the insured which continue as grounds of forfeiture against him." *Id.*, 136 S.C. at 164, 134 S.E. at 270. Pursuant to a loss payable clause, a mortgagee cannot recover if the owner cannot. *Orenstein v. Star Ins. Co.*, 10 F.2d 754 (4th Cir.1926) (applying South Carolina law).

There is no language in this policy providing additional coverage or a separate duty to the Bank where the insured invalidates his coverage through his own actions. The policy does, however, contain an open mortgage or loss payable clause. Therefore, Brown's fraud as an insured terminated the Bank's right to recover from Nationwide. *See Rawl v. American Central Ins. Co*, 94 S.C. at 301, 77 S.E. at 1013.

The Bank argues it should be considered a "co-insured" on the insurance policy under the reasoning of *McCracken v. Gov't Employees Ins. Co.*, 284 S.C. 66, 325 S.E.2d 62 (1985). We find this argument to be without merit. In that case the wife was a named co-insured on a homeowner's insurance policy. When her husband intentionally set fire to their residence without her knowledge or participation, she was found to be entitled to coverage, absent policy language to the contrary. The Bank, however, is not a named co-insured on this policy. Its name does not appear as a policyholder (named insured) with Clarence Brown on the policy declaration page.

The Bank argues the reference to "organizations" in the policy definition of "Insured" thereby includes the Bank as an insured, and thus, a "co-insured." The policy definition is: "3. the words 'THE INSURED,' 'AN INSURED,' and 'ANY INSURED' mean or refer to the persons and organizations specifically indicated as entitled to protection under the coverage being described." Even if this language includes the Bank as an insured, the Bank's right to payment is governed by the endorsement language, which specifically denies payment in the event of fraud by the policyholder. In *McCracken*, the court limited its holding as follows:

> We decline to make any distinction between property which is held jointly or severably and hold that *in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured,* the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds.

*Id.*, 284 S.C. at 69, 325 S.E.2d at 64 (emphasis added). Because this policy contains the specific language denying payment in the event of the policyholder's fraud, *McCracken* is inapposite.

For the foregoing reasons, the decision of the trial court is REVERSED.

HOWELL, C.J., and HUFF, J., concur.