529 S.E.2d 554

**WACHOVIA BANK OF SOUTH CAROLINA, N.A., Respondent,**

v.

**Martha B. THOMASKO, Appellant.**

No. 3140.

Court of Appeals of South Carolina.

Submitted March 7, 2000.

Decided March 27, 2000.

Rehearing Denied May 27, 2000.

William Isaac Diggs, of Myrtle Beach, for appellant.

Douglas M. Zayicek, Henrietta Golding and Mary Anna Malpass, all of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, of Myrtle Beach, for respondent.

GOOLSBY, Judge:

Wachovia Bank of South Carolina, N.A., brought this action for unjust enrichment to recover an overpayment to Martha B. Thomasko that occurred when she exchanged foreign currency at the bank. The trial court granted Wachovia summary judgment and ordered Thomasko to repay Wachovia $21,-213.64, plus prejudgment interest. Thomasko appeals. We affirm.[1]

On March 10, 1997, Thomasko presented 183,000 Mexican pesos and 78,000 Spanish pesetas to the Wachovia branch in Spartanburg and requested United States currency in exchange. The teller mistakenly calculated the value of the foreign currency as $21,741.10. The teller issued Thomasko a cashier's check in the amount of $21,503.44. The check represented the exchange for both the pesos and the pesetas ($21,741.10), minus a $237.66 transaction fee.

Two days later, on March 12, 1997, Wachovia determined the currency presented by Thomasko was actually worth $527.46, instead of $21,741.10. The error arose from the teller's miscalculation of the pesos' value.[2]

In January 1993, the Mexican government devalued the peso by a factor of 1,000. The Mexican government issued "nuevo pesos" that equaled 1,000 old pesos. The government circulated the new pesos and the old pesos jointly. Due to the devaluation, Thomasko's old pesos were actually worth only

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Thomasko was given $506.23 for the 78,000 Spanish pesetas. There was no error made in this exchange.

183 new pesos. On March 10, 1997, the exchange rate for new pesos was 8.6179 cents per peso.

Immediately upon discovering its error, Wachovia contacted Thomasko seeking recovery of the overpayment. Wachovia informed Thomasko of the error and sought a return of the $21,216.64 overpayment.[3] Thomasko, however, refused to repay Wachovia. After several subsequent attempts to collect the overpayment failed, Wachovia filed an action for unjust enrichment on May 5, 1997.

In her answer, Thomasko maintained she should not be required to return the excess funds because she had already spent the money to pay previously incurred medical bills. She also alleged she was financially incapable of returning the overpayment. Thomasko further alleged she relied upon Wachovia's representations as to the value of the foreign currency and Wachovia was negligent in ascertaining its true value. Thomasko sought either a dismissal of Wachovia's action or an offset for damages caused by Wachovia's alleged negligence. The trial court awarded summary judgment to Wachovia, finding it had "clearly made a case for restitution based on unjust enrichment" and finding Thomasko's defenses to be without merit.

Thomasko contends the trial court erred in granting Wachovia summary judgment because she submitted affidavits establishing that: (1) she is not physically well; (2) she no longer has the money given to her by the bank; (3) she is no longer employed; and (4) requiring her to pay restitution "would work an extreme financial hardship." Thomasko asserts "[b]ecause there is a factual dispute about whether [she] learned of the error before she paid her medical expenses or afterwards ... summary judgment [is] inappropriate." We disagree.

In 1879, our supreme court held, "There can be no doubt of the correctness of the legal proposition that, where money is paid under a mistake of fact, to a person who has no ground in

---

3. The overpayment of $21,213.64 is the difference between the miscalculated value of the foreign currency ($21,741.10) and the asserted actual value ($527.46).

conscience to claim it, the person paying it may recover it back." [4]

Thomasko asserts detrimental reliance as a defense. The trial court found that even if detrimental reliance were a defense, Thomasko did not show any change in position because she admittedly used the money to pay pre-existing medical bills.

■ In an action to seek repayment of money paid under mistake of fact, it is generally no defense that the money has been spent or paid over to another.[5] Under limited circumstances, however, repayment will not be required where the recipient detrimentally relied on the overpayment.[6] For Thomasko to prevail under a theory of detrimental reliance, she is required to demonstrate that in paying back the money, she would suffer a greater detriment than she would have incurred had she never received the overpayment.[7]

■ In the present case, Thomasko has failed to establish detrimental reliance. Mere payment of pre-existing debts is insufficient to establish such reliance.[8] By requiring Thomasko to repay Wachovia, the court is simply restoring her to the same status she occupied prior to her receipt of the overpayment.

---

4. *Glenn v. Shannon*, 12 S.C. 570, 570 (1880). *See also Pilot Life Ins. Co. v. Cudd*, 208 S.C. 6, 36 S.E.2d 860 (1945) (holding the general rule is that money paid to another under a mistake of fact may be recovered because the money belongs, in equity and good conscience, to the person who paid it).

5. *See Castock Corp. v. Bailey*, 128 Misc.2d 1068, 492 N.Y.S.2d 921 (1985) (the fact that recipient has parted with the money is an insufficient excuse to forgive repayment); 70 Am.Jur.2d *Payment* § 114(c) (1987) (no defense where money has been paid to another or spent).

6. *See Pilot Life*, 208 S.C. at 14, 36 S.E.2d at 863 (noting that repayment would be just provided there had been no change in position); 70 Am.Jur.2d *Payment* § 114(c) (1987) ("In general, where a payee has suffered a detriment or has materially and irrevocably changed his position to his prejudice in reliance on the payment and cannot be placed in the statu[s] quo, the payment cannot be recovered....").

7. 70 Am.Jur.2d *Payment* § 114(c) (1987).

8. *Castock*, 492 N.Y.S.2d 921.

█ Further, Thomasko's assertion that the currency was worth more when she first acquired it is immaterial. Thomasko was only entitled to the value of the foreign currency as of March 10, 1997, the date of the exchange. The fact that it may have been worth more at one time is not relevant.[9]

█ To the extent Thomasko argues summary judgment is inappropriate because there is a question of fact as to whether the mistake in this case was mutual or unilateral, Thomasko did not raise this issue below; therefore, it is not preserved for our review.[10]

Viewing the evidence in the light most favorable to Thomasko, we find the trial court properly granted summary judgment for Wachovia.

**AFFIRMED.**

CONNOR and HOWARD, JJ., concur.

---

9. *Cf. Brabham v. Crosland*, 25 S.C. 525, 1 S.E. 33 (1886) (holding that where guardian received proceeds from the sale of real estate in Confederate currency but it had not been paid over, the ward assumed the risk in the loss of value as the currency was legal tender at the time it was received and the guardian was not responsible for the devaluation).

10. *SSI Medical Services v. Cox*, 301 S.C. 493, 392 S.E.2d 789 (1990).