547 S.E.2d 871

**SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Respondent,**

v.

**William A. KELLY and Edward Glenn Kelly, Defendants,**

**of whom William A. Kelly is, Appellant.**

No. 3332.

Court of Appeals of South Carolina.

Heard March 6, 2001.

Decided April 16, 2001.

Rehearing Denied July 2, 2001.

234

Richard E. Thompson, Jr., of Thompson & King Law Firm, of Anderson, for appellant.

Amy G. Richmond and Jack D. Griffeth, both of Love, Thornton, Arnold & Thomason, of Greenville, for respondent.

HEARN, Chief Judge:

In this declaratory judgment action, William A. Kelly (Kelly) appeals the grant of summary judgment to South Carolina Farm Bureau Mutual Insurance Company (Farm Bureau). The summary judgment order permits Farm Bureau to recover payment made on Kelly's homeowners' insurance policy for two fires at his residence. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

On July 19, 1994, a fire began in the master bedroom of the home where Kelly lived with his wife and adult son, Glenn. Glenn was the only family member at home when the fire started.

When questioned about the fire, Glenn told Farm Bureau investigators that he was in the shower when he heard a popping sound. He got out of the shower and saw his parents' bedroom in flames. Glenn went across the street to his uncle's house and called the fire department. Glenn opined that lightning struck the house, starting the fire.

Kelly filed a claim for the fire damage under his Farm Bureau homeowners' policy. Farm Bureau paid Kelly policy benefits of $61,299.24 for damage to the residence's structure and contents.

On May 30, 1995, there was a second fire in the home which began in Glenn's bedroom. When interviewed by Farm Bureau regarding this fire, Glenn stated that his mother was the last person to leave the house before the fire. Glenn denied setting the fire and denied knowing anyone else who had keys to the house or would want to burn it. Kelly filed another claim, and Farm Bureau paid $46,185.97 in policy benefits.

In June 1997, there was a third fire in the home. Within days, Glenn signed a written confession admitting to arson in connection with all three fires. Glenn stated he started the

third fire in the attic, and in December 1997 he pled guilty to three counts of arson.

Farm Bureau filed this action in May 1998 to recover the money it paid Kelly on the first two fire claims. Farm Bureau moved for summary judgment, and the circuit court granted that motion. Kelly appeals.

## DISCUSSION

Kelly argues the circuit court improperly granted summary judgment because: (1) the action was barred by the statute of limitations; (2) the claim payments were accords and satisfactions; (3) insurers may not recover payments and void policies after claims have been paid; and (4) Glenn was not an insured and did not commit an intentional loss as defined by the policy.

"Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law." *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997); *see also* Rule 56(c), SCRCP. In reviewing a grant of summary judgment, the evidence and inferences therefrom must be viewed in the light most favorable to the nonmoving party. *See Lanham v. Blue Cross & Blue Shield of S.C.*, 338 S.C. 343, 347, 526 S.E.2d 253, 255 (Ct.App.2000). A court should not grant a motion for summary judgment if the evidence and reasonable inferences therefrom indicate a genuine issue of material fact. *Id.*

### A. Statute of Limitations

█ Kelly raised the statute of limitations as an affirmative defense to Farm Bureau's action. On appeal, Kelly argues the trial court erred in declining to dismiss Farm Bureau's action pursuant to the statute of limitations found in S.C.Code Ann. § 15-3-530 (1976 & Supp.1999). This section mandates that an action on a fire insurance policy on account of a loss be brought within three years. *Id.* Kelly contends Farm Bureau failed to file its action within three years of the first fire, and

therefore the action should have been dismissed. We disagree.

 The first fire occurred on July 19, 1994. The second fire occurred on May 30, 1995. Farm Bureau filed this action on May 22, 1998. Here, the statute of limitations is subject to the discovery rule and runs not from the date of injury but rather from the date the injured party knew or should have known a cause of action existed. *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996); *Tollison v. B & J Mach. Co.*, 812 F.Supp. 618, 619 (D.S.C.1993).

 To claim the protection of the discovery rule, the injured party must have been reasonably diligent in discovering whether a cause of action existed. *Grillo v. Speedrite Prods., Inc.*, 340 S.C. 498, 502–03, 532 S.E.2d 1, 3 (Ct.App. 2000). Reasonable diligence requires that "the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist." *Dean*, 321 S.C. at 363–64, 468 S.E.2d at 647 (citation omitted). "The date on which discovery should have been made is an objective, not subjective, question." *Kreutner v. David*, 320 S.C. 283, 285, 465 S.E.2d 88, 90 (1995).

Regardless of when the cause of action accrued under the discovery rule for the second fire, Farm Bureau clearly filed to recover for its second payment within three years. We therefore affirm the circuit court's dismissal of Kelly's statute of limitations argument regarding the claim for the second fire and look to whether Farm Bureau's action with respect to the first fire and claim was timely under the statute.

In support of its motion for summary judgment, Farm Bureau submitted transcripts of interviews it conducted with Glenn and Joyce Kelly, and a sworn statement from Glenn Kelly dated August 8, 1995. In the statement, Glenn denied any responsibility for the second fire.

The trial judge found:

In the present case, the Plaintiff conducted a thorough investigation into the facts surrounding the cause of the fires. The Plaintiff went to the scene of the incident and interviewed witnesses, took recorded statements of Edward

Glenn Kelly, examined the physical evidence at the scene, took photographs and even sought the advise [sic] of an attorney concerning how to handle the claim. At the conclusion of the Plaintiff's investigation, the Plaintiff was unable to conclude that the fires had been intentionally set by an insured resident relative of the household, and therefore it paid the claim.

In opposition to the motion for summary judgment, Kelly submitted his own affidavit stating Glenn was not an insured under the policy, did not have an insurable interest in the property, and did not receive payment for the loss. Kelly's affidavit also stated that Farm Bureau should not be allowed to recoup money already paid to Kelly and the statute of limitations defense should prevent summary judgment. He also contends summary judgment was inappropriate because he and Farm Bureau reached an agreement regarding payment under the terms of the policy.

Examining the evidence in the light most favorable to Kelly, we do not find any evidence in the record that Farm Bureau's investigation was anything but reasonably diligent. There was evidence that Farm Bureau went to Kelly's home after each fire, took sworn statements from Glenn, examined the physical evidence at Kelly's home, took photographs, and sought the advice of an attorney about handling the claim. At the conclusion of these investigations, Farm Bureau was unable to conclude the fires had been intentionally set and paid the claims. Kelly put forth nothing to dispute this evidence other than his own statements that Farm Bureau should have had notice that the fires were intentionally set.[1] Because Kelly had the burden of putting forth specific facts to show there was a genuine issue of material fact for trial and he did not do so, the trial judge properly granted summary judgment to Farm Bureau on this issue.

## B. Accord and Satisfaction

█ Kelly next argues the circuit court erred in granting summary judgment because the policy release was an accord and satisfaction, and thus a complete defense.

---

1. The fallacy in this argument is readily apparent. Kelly, who was living in the home at the time, ostensibly had no notice of his son's actions in setting the fire, yet he asserts that Farm Bureau should have had notice.

██ We initially note that this defense was waived and is therefore not properly before us.[2] Accord and satisfaction is an affirmative defense which must be pleaded and proved. Rule 8(c), SCRCP; *Adams v. B & D, Inc.*, 297 S.C. 416, 419, 377 S.E.2d 315, 317 (1989) (stating that the defense of accord and satisfaction must be pleaded in a party's answer to be before the trial court); *Borg Warner Acceptance Corp. v. Darby*, 296 S.C. 275, 279, 372 S.E.2d 99, 101 (Ct.App.1988) (stating that an affirmative defense must be pleaded in a party's answer). Kelly failed to plead accord and satisfaction as a defense in his answer; therefore, this defense was waived.[3]

## C. Kelly's Status as an Innocent Insured

██ Kelly argues the intentional loss provision of the policy is ambiguous and he, as an innocent insured, should be permitted to recover under the policy. Citing *McCracken v. Government Employees Insurance Co.*, 284 S.C. 66, 325 S.E.2d 62 (1985), Kelly contends he is entitled on fairness grounds to retain the payments as an innocent insured. The trial court did not address or rule on this issue; therefore, it is not preserved for our review. *See Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) ("It is well-settled that an issue cannot be raised for the first time on

---

**2.** The circuit court addressed the merits of this issue despite the waiver.

**3.** Even if we were to reach the merits of this argument, we would still affirm the trial court's grant of summary judgment. "An accord and satisfaction occurs when there is (1) an agreement to accept in discharge of an obligation something different from that which the creditor is claiming or is entitled to receive; and (2) payment of the consideration expressed in the new agreement." *Tremont Constr. Co. v. Dunlap*, 310 S.C. 180, 182, 425 S.E.2d 792, 793 (Ct.App.1992); *Mercury Marine Div. v. Costas*, 288 S.C. 383, 386, 342 S.E.2d 632, 633 (Ct.App. 1986).

Viewing the evidence in the light most favorable to Kelly, there is no evidence in the record that Farm Bureau paid Kelly less than the amount Kelly claimed under the policy. This is an essential element of an accord and satisfaction. *Tremont Constr. Co.*, 310 S.C. at 180, 425 S.E.2d at 793. Because Kelly has failed to prove this element of accord and satisfaction, the trial court properly granted summary judgment to Farm Bureau as to this issue.

appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review.").[4]

### D. Glenn's Status as an Insured

■■ Kelly further asserts Glenn was not an insured under the policy because Glenn had no insurable interest under the policy. We disagree. The policy defines "insured" as "**you** and residents of **your** household who are: **your** relatives...."[5] This policy language is clear and unambiguous; therefore, we need not look beyond the policy to determine its meaning. *MGC Mgmt. of Charleston v. Kinghorn Ins. Agency*, 336 S.C. 542, 548–49, 520 S.E.2d 820, 823 (Ct.App.1999) (stating that the court must give insurance policy language its plain, ordinary, and popular meaning); *Nationwide Mut. Ins. Co. v. Commercial Bank*, 325 S.C. 357, 359, 479 S.E.2d 524, 526 (Ct.App.1996) (stating that an insurer's obligation under an insurance policy cannot be enlarged by judicial construction). Analyzing the definition of "insured" provided in the insurance policy, it is immaterial whether Glenn has an insurable interest. Glenn is an insured if he is the named insured or a resident relative of the household. It is uncontested that Glenn is Kelly's son and that Glenn was a resident in Kelly's home. Under the policy language, and viewing the record in the light most favorable to Kelly, Glenn qualifies as an insured under the policy.

---

4. Even if treated on the merits, Kelly's argument is unavailing. *McCracken* stands for the proposition that "in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds." 284 S.C. at 69, 325 S.E.2d at 64. Unlike *McCracken*, Kelly's policy specifically denies coverage for any loss arising from an intentional act by or at the direction of any insured. We take instruction from our unpublished opinion of *State Farm Fire & Casualty Co. v. Mitchell*, Op. No. 98–UP–100 (S.C. Ct.App. filed Feb. 19, 1998). In *Mitchell*, this court held that an innocent co-insured was barred from recovery under the insurance policy because that policy had specific language denying recovery if that insured or any other insured caused or procured the loss for the purpose of obtaining insurance benefits. *Id.* at 2. This is the exact language of the insurance policy Farm Bureau issued to Kelly.

5. The rest of this definition does not apply in this case.

■ Kelly also contends Glenn's actions do not trigger the intentional loss section of the insurance policy because Glenn did not start the fires to obtain insurance benefits. We disagree. The policy exclusion for intentional losses states: "**We** do not insure for loss caused directly or indirectly . . . out of any act committed by any insured with the intent to cause a loss." This policy language is clear and unambiguous, so we will not look outside the policy to determine its meaning. *MGC Mgmt. of Charleston,* 336 S.C. at 548–49, 520 S.E.2d at 823; *Nationwide Mut. Ins. Co.,* 325 S.C. at 359, 479 S.E.2d at 526. According to the language of the policy, Glenn's actions triggered the exclusion for intentional losses because Glenn acted with an intent to cause a loss. When asked why he started the fires, Glenn stated: "[T]here are just too many memories of my sister in that house and I couldn't stand to live there anymore." Glenn intended to burn the home to rid himself of his sister's memories. Viewed in the light most favorable to Kelly, Glenn's actions fall within the policy exclusion for intentional losses, and the circuit court properly granted summary judgment to Farm Bureau on this issue.

## E. Farm Bureau's Recovery of Claims Paid

■ Kelly contends the policy does not permit Farm Bureau to recover money for claims paid. He specifically argues that the insurer may not void the policy after paying a claim, and he cites case law for the proposition that this court must give the policy language its plain and ordinary meaning rather than extending or defeating coverage beyond that which the parties anticipated. *See Fritz–Pontiac–Cadillac–Buick v. Goforth,* 312 S.C. 315, 440 S.E.2d 367 (1994); *State Auto Prop. & Cas. Co. v. Brannon,* 310 S.C. 388, 426 S.E.2d 810 (Ct.App. 1992). Examining the policy language under its plain and ordinary meaning convinces us that, contrary to Kelly's assertions, Farm Bureau may bring an action to recover claims it has previously paid.

Section I, paragraph 15, provides: "If **you** or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and **we** will not pay **you** or any other **insured** for this loss." The policy further states: "If **you** or any other **insured** under this policy has intentional-

ly concealed or misrepresented any material fact or circumstance, or made false statements or engaged in fraudulent conduct relating to this insurance, whether before or after a loss, then this policy is void as to **you** and any other **insured.**" We have already found Glenn to be an insured under section 15 of the policy; accordingly, we find these sections of the policy also apply to Glenn.

South Carolina case law provides little guidance on this issue; however, it has been treated in other jurisdictions. When an insurer has paid a claim as a result of fraud, a false statement by an insured, or mistake, courts have permitted the insurer to recover its payment.[6] *See S. Farm Bureau Life Ins. Co. v. Burney,* 759 F.2d 658, 658 (8th Cir.1985); *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.,* 911 F.Supp. 1249, 1259–60 (D.Neb.1995), *rev'd on other grounds,* 118 F.3d 1263 (8th Cir.1997). The *Lindsay* court stated that "it would be unwise to discourage insurers from making payments, even if the payments were made in error, by refusing to permit later adjustments." 911 F.Supp. at 1259 (citing *Harnischfeger Corp. v. Harbor Ins. Co.,* 927 F.2d 974, 977 (7th Cir.1991)).

We find the case of *Tyler v. Fireman's Fund Insurance Co.,* 255 Mont. 174, 841 P.2d 538 (1992), particularly instructive. In *Tyler,* an insurance company brought an action to recover on a claim it had already paid the insureds, after learning that a fire was intentionally set by one of them. *Id.* The court held that an insurer could recover for claims paid due to fraud even if one insured was not aware of any fraud. *Id.* at 541. As in the instant case, the language of the insurance policy specifically stated that it would be void if the insured willfully concealed or misrepresented any material fact or circumstance concerning this insurance policy. *Id.* The court stated that a party is entitled to recover money which it paid by mistake of fact or law and which the receiver ought not to retain in equity

---

6. Some courts nonetheless permit an insured to retain money paid due to mistake when the insured can demonstrate he or she significantly changed position such that it would be inequitable to require restitution. *See U.S.F. & G. Co. v. Newell,* 505 So.2d 284, 287–88 (Miss.1987); *Western Cas. & Sur. Co. v. Kohm,* 638 S.W.2d 798, 800–01 (Mo.Ct.App. 1982). Kelly, however, does not contend that he has detrimentally changed his position due to receipt of the payments; thus, that particular issue is not before us.

and good conscience. *Id.* (quoting *McDonald v. Northern Benefit Ass'n,* 113 Mont. 595, 131 P.2d 479, 486 (1942)).

There is precedent in this state for allowing an insurance company to recover for amounts paid as a result of a mistake of fact. In *Pilot Life Insurance Co. v. Cudd,* 208 S.C. 6, 36 S.E.2d 860 (1945), Pilot Life paid the beneficiary's claim and returned a premium payment made after the date of the insured's presumptive death. *Id.* at 12–13, 36 S.E.2d at 863. Pilot Life later learned that the insured was alive and requested the return of the money it paid on the death claim. *Id.* at 13–14, 36 S.E.2d at 863. The court found Pilot Life was entitled to recover this money. *Id.* at 19, 36 S.E.2d at 865.

Kelly asserts *Pilot Life* is not controlling because he suffered property loss while the insured in *Pilot Life* did not suffer any property loss. We disagree. The *Pilot Life* court did not base its decision on the absence of property loss. The court instead held that Pilot Life's payment was based on a mistake of fact and that the beneficiary must therefore return the money paid. *Id.* at 18, 36 S.E.2d at 865. Therefore, we find no support for Kelly's argument that *Pilot Life* is not controlling and that Farm Bureau may not file an action to recover money paid under the policy.

For the foregoing reasons, the judgment of the circuit court is hereby

**AFFIRMED.**

CURETON and SHULER, JJ., concur.