0948

Nell J. AUSTIN, Administratrix of the Estate of John Heath Austin, Appellant v. CONWAY HOSPITAL, INC., Respondent.

(356 S. E. (2d) 153)

Court of Appeals

*Martin S. Driggers,* of *Driggers & Baxley,* Hartsville, *for appellant.*

*John B. McCutcheon* and *John B. McCutcheon, Jr.,* both of *McCutcheon & McCutcheon,* Conway, *for respondent.*

Heard March 23, 1987.

Decided April 27, 1987.

SANDERS, Chief Judge:

Appellant Nell J. Austin brought separate actions against respondent Conway Hospital, Inc. alleging medical malpractice in causing the death of her husband, John Heath Austin, and in causing him to experience pain and suffering prior to his death. The Circuit Court granted the pretrial motion of the Hospital to amend its answers so as to plead the statute of limitations and thereafter directed a verdict in favor of the Hospital on the ground that the actions were barred by the statute. Mrs. Austin appeals. We affirm.

The material facts are undisputed.

Mr. Austin was admitted to the Hospital on February 18, 1981 suffering from jaundice believed to have been caused by his chronic consumption of alcohol. He subsequently died while still a patient there. Mrs. Austin testified as to certain events which she observed just prior to his death. Her testimony as to these events may be summarized as follows.

When Mrs. Austin came to visit her husband on March 6, she saw that a feeding tube had been inserted through his nose and into his stomach. He did not seem to be experiencing any problems with the tube and appeared to be getting along well.

Mrs. Austin next came to visit her husband on March 7. He again appeared to be doing well, and she remained with him in his room overnight. In the early morning of March 8, a nurse came into the room and began to rapidly pour milk

into the tube. She did nothing to check the tube before doing so, having indicated to Mr. Austin that she was in a hurry to get off duty. The milk immediately came out through his nose and mouth. Mr. Austin began gagging and appeared to be badly strangled. The nurse then poured water into the tube on top of the milk. Mrs. Austin beseeched her to stop.

The nurse and another nurse then used a machine to suction a white liquid from the throat of Mr. Austin. However, they eventually turned off the machine and left the room even though he continued to appear to be strangling.

Mrs. Austin called a friend who came to the Hospital and attempted to comfort her husband. One of the nurses came back into the room about an hour later and asked if anyone had changed the urine bag connected to Mr. Austin. She then left the room, apparently without rendering him any assistance. An orderly, who Mrs. Austin had hired to sit with her husband, arrived a few minutes thereafter and, after observing Mr. Austin for a short period of time, told Mrs. Austin that they had better get some help for him. She went to the nurses' station and requested assistance.

A nurse came to the room and told Mrs. Austin and the friend to stay out in the hall, where they remained for about an hour. When they went back into the room, Mr. Austin was not responding and appeared to be in extreme distress. The physician who had been treating Mr. Austin came into the room and rushed Mrs. Austin and the friend out. A short time later the physician came out of the room and told Mrs. Austin that her husband had died.

An autopsy was subsequently performed. The autopsy report states:

> In the morning of March 8, 1981 the patient regurgitated a tube feeding, aspirated and subsequently developed respiratory distress. He was unresponsive to verbal stimulation and his eyes were shifted to the left. Soon after, he developed agonal respirations and intubation was attempted followed by a copius regurgitation. Subsequent resuscitation was unsuccessful and the patient expired at 10:12 a.m.

Approximately seven weeks after the death of her husband, Mrs. Austin contacted a lawyer regarding the events

of his hospitalization. On April 27, 1981, the lawyer wrote a letter to the Hospital requesting the medical records of Mr. Austin for the period of his hospitalization. The Hospital forwarded these records on or about June 10, 1981.

Mrs. Austin commenced these actions on April 9, 1984 more than three years after the death of her husband but less than three years from the date the Hospital forwarded his medical records to her.

The answers of the Hospital to her complaints did not initially plead the statute of limitations as a defense, but the Hospital thereafter moved to amend its answers so as to plead the statute. The Court granted the motion of the Hospital on May 14, 1985.

Trial of the cases was begun on June 17, 1985. At the conclusion of all testimony, the Hospital moved for a directed verdict on the ground that the actions brought by Mrs. Austin were barred by the statute of limitations. The Court granted its motion. This appeal followed.

The issues presented on appeal are: (1) whether the Hospital waived the statute of limitations; (2) whether the Circuit Court erred in allowing the Hospital to amend its answers; (3) whether the limitation period began to run on the date Mr. Austin died or on some date thereafter; and (4) whether the Hospital is equitably estopped to avail itself of the statute of limitations.

I

Mrs. Austin first argues that the Hospital waived the defense of the statute of limitations by failing to plead the statute in its first answers to her complaints. She relies on our relatively recent decision in *Davie v. Atkinson*, 281 S. C. 102, 313 S. E. (2d) 648 (Ct. App. 1984), *appeal after remand*, 291 S. C. 188, 352 S. E. (2d) 517 (Ct. App. 1987). Mrs. Austin misunderstands our holding in this case. *Davie* simply stands for the proposition that the statute of limitations must be pleaded at some point. The case does not hold that the statute of limitations is forever waived if not initially pleaded. *See Sauls-Baker Co. v. Atlantic Coast Line R. Co.*, 109 S. C. 285, 96 S. E. 118 (1918) (affirmed the decision of a magistrate to allow the defendant to amend his answer so as to plead the statute of

limitations); *Mason v. Johnson,* 13 S. C. 20 (1879) (affirmed the decision of a referee to allow the defendant to amend his answer so as to plead the statute of limitations); *Groninger v. Davison,* 364 F. (2d) 638, 640 (8th Cir. 1966) ("It appears to be settled that there is no waiver of the statute of limitations defense if the answer is properly amended to include it."); *Emich Motors Corp. v. General Motors Corp.,* 229 F. (2d) 714 (7th Cir. 1956) (waiver of statute of limitations by failure to plead it prior to first trial was not final and trial court had discretion to permit the plea on subsequent trial after remand by the reviewing court).

## II

Mrs. Austin further argues that the Circuit Court erred by allowing the Hospital to amend its answers.

Decisions of the Circuit Court on motions to amend pleadings will not be disturbed unless both an abuse of discretion and prejudice are shown. *Crowley v. Spivey,* 285 S. C. 397, 329 S. E. (2d) 774 (Ct. App. 1985); *Sauls-Baker Co. v. Atlantic Coast Line R. Co., supra; Mason v. Johnson, supra.* The motions of the Hospital to amend were granted more than a month prior to the commencement of the trial of the cases. The record does not reflect that Mrs. Austin made any motion for a continuance. She has not shown any prejudice other than the prejudice suffered by any plaintiff against whom a defense has been successfully asserted. We find no abuse of discretion or prejudice under the circumstances.

## III

Mrs. Austin next argues that the Circuit Court erred in ruling that her actions were barred by the statute of limitations.

The statute of limitations for actions alleging medical malpractice requires that such actions must be "commenced within three years from the date of the treatment, omission or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence." *See* Section 15-3-545, Code of Laws of South Carolina, 1976, as amended. A similar requirement is contained

in another statute providing a limitation period for the commencement of certain other actions. *See* Section 15-3-535 ("[certain actions] shall be commenced within six years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."). Our Supreme Court has construed this section to provide an objective standard as to when the limitation period begins to run. *See Rogers v. Efird's Exterminating Co.*, 284 S. C. 377, 379, 325 S. E. (2d) 541, 542 (1985) ("[the statute of limitations begins to run when] the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist."). A very recent case specifically applied this language in an action alleging medical malpractice. *See Smith v. Smith, M.D.*, 354 S. E. (2d) 36 (S. C. 1987).

The events which Mrs. Austin observed on the morning her husband died were more than sufficient to put a person of common knowledge and experience on notice that some claim against another party might exist. Moreover, when the facts and circumstances are carefully analyzed, the conclusion is inescapable that Mrs. Austin actually knew some claim might exist at that time. She obviously knew some claim might exist at the time she consulted the lawyer. The record does not reflect that anything of significance occurred between the time she observed these events and the time she consulted the lawyer. She therefore must have known some claim might exist at the time she observed these events. The statute of limitations began to run from this point, not when she consulted the lawyer or developed a theory of recovery after receiving the records from the hospital. *See Snell v. Columbia Gun Exchange, Inc.*, 276 S. C. 301, 303, 278 S. E. (2d) 333, 334 (1981) ("The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.").

## IV

Mrs. Austin finally argues that the Hospital is equitably estopped to avail itself of the statute of limitations because of its delay in forwarding the medical records of her husband, or that the limitation period pro-

vided by the statute was tolled until the Hospital delivered the records. We cannot address these arguments because they were not made to the Circuit Court. *See Windham v. Honeycutt,* 290 S. C. 60, 348 S. E. (2d) 185 (Ct. App. 1986) (a question not presented to the trial judge is not properly before this Court); *Peoples Federal Savings and Loan Association v. Graham,* 291 S. C. 178, 182, 352 S. E. (2d) 511, 513 (Ct. App. 1987) ("Where a point has not been decided by the lower court, we will not consider the point on appeal.").

For these reasons, the order of the Circuit Court is

Affirmed.

CURETON and GOOLSBY, JJ., concur.