**Jane ROE, Plaintiff–Appellant,**

v.

**Jane DOE; John Doe, Defendants–Appellees.**

No. 93–1991.

United States Court of Appeals, Fourth Circuit.

Argued March 10, 1994.

Decided June 29, 1994.

Gregg Meyers, Wise & Cole, P.A., Charleston, SC, for appellant.

John Hamilton Smith, Young, Clement, Rivers & Tisdale, Charleston, SC, argued (Stephen P. Groves, on brief), for appellees.

Before HALL and LUTTIG, Circuit Judges, and BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

BRINKEMA, District Judge:

The plaintiff-appellant appeals from the district court's summary judgment for defendants based on the court's holding that her personal injury action was barred by South Carolina's statute of limitations. The district court found that appellant failed to commence her action within three years of the date by which a person of common knowledge and experience would be on notice that

she might have a cause of action. The issue before us is whether the South Carolina statute of limitations and discovery rule should be applied differently to plaintiffs in repressed recollection childhood sexual abuse cases than to plaintiffs in cases not involving repressed recollection. Because we find that a South Carolina court would hold as the court below did, we affirm.

## I.

Plaintiff sued her cousin and aunt, alleging that in 1952 when she was only four or five years old, she was sexually abused by her thirteen-year old cousin, and that her aunt knew or should have known of the abuse and stopped it. As plaintiff's expert testified, it is common for childhood sex abuse victims to repress their memory of the abuse for many years; in this case, over thirty-five years. Memories of the specific abusive acts were the last step in plaintiff's gradual awareness of having been abused.

At first, plaintiff experienced dreams or "images" of her cousin abusing her but she did not know how to interpret them. Nevertheless, by November, 1988, the plaintiff told her mother and sister that she believed that her cousin had abused her. Approximately four months later, on April 27, 1989, she consulted a therapist, Sarah Herring, at the Covenant Counseling Center. In filling out a "Personal Data Inventory" form for prospective new patients, plaintiff stated as her reason for seeking counseling that she had been "molested as [a] child" and that this could be affecting her adult relationships.

Without going into graphic detail, it is sufficient to say that Herring's notes from sessions with plaintiff on April 27 and May 4, 1989 contain plaintiff's descriptions of various sexual acts, her reactions to them and feelings and where and when such acts seemed to have taken place. It is, at best, ambiguous from the therapist's abbreviated notes whether plaintiff was describing events that she thought might have happened or events she knew, with certainty, had happened. Plaintiff testified at her deposition "I told [Herring] that I thought I could have been molested. Yeah, this is all based on my thinking that that might have happened. I

had enough evidence to think that that could have occurred." Drawing all reasonable inferences in favor of the plaintiff's position, we conclude that on April 27 and May 4, 1989, she told her therapist that she believed she might have been molested and told her about the specific images that were troubling her.

On June 21, 1989, the plaintiff experienced her first recollection of the abusive acts; that is, she experienced something that she perceived as a memory of an actual event from her past, in contrast to her previous dreams and images and her resulting impression. In July, 1989, plaintiff's therapist was sufficiently confident that abuse had actually occurred that she filed a report of abuse with state authorities.

On May 5, 1992, plaintiff mailed her summons and complaint in this action against her cousin and aunt, alleging outrage, negligent infliction of emotional distress, invasion of privacy and assault. The defendants moved for summary judgment based on the statute of limitations. Plaintiff opposed the motion and also moved to certify the issue now before us to the South Carolina Supreme Court. The motion to certify was denied. The court granted defendants' motion to dismiss the action as barred by the statute of limitations, finding that "certainly a person of common knowledge and experience who is continually able to recall and describe the specific locations of abuse, the actions of the abuser and his conversations as plaintiff did for a six-month period between November of 1988 and May 4, 1989, would have been on notice that some claim against another party might exist."

## II.

■ The standard of review for a district court's grant of summary judgment is *de novo*. The standard for granting summary judgment, which we revisit on appeal, is met if upon review of all the pleadings, depositions, affidavits and other documents submitted by the parties, the court finds that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the evidence, the court must draw all reasonable inferences in favor of the non-moving party. Similarly, in our *de novo* review, this court must draw all reasonable inferences in favor of the appellant.. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962).

 Federal courts in diversity cases apply the law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern. *Wilson v. Ford Motor Co.,* 656 F.2d 960, (4th Cir.1981); *Empire Distributors of N.C. v. Schieffelin & Co.,* 859 F.2d 1200, 1203 (4th Cir.1988); *Doe v. Doe,* 973 F.2d 237, 240 (4th Cir.1992). Only if the available state law is clearly insufficient should the court certify the issue to the state court. *Smith v. FCX, Inc.,* 744 F.2d 1378, 1379 (4th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2330, 85 L.Ed.2d 848 (1985). On appeal, we review the trial court's determination of state law *de novo. Salve Regina College v. Russell,* 499 U.S. 225, 231–32, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

South Carolina's statute of limitations for personal injury actions is found at S.C.Code § 15–3–535 (Supp.1992) and requires that a plaintiff commence an action "within three years after the person knew or by the exercise of reasonable diligence should have known that [she] had a cause of action." South Carolina's courts have construed this to mean that the statute begins to run when "the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist." *Burgess v. American Cancer Soc., South Carolina Div., Inc.,* 300 S.C. 182, 186, 386 S.E.2d 798, 800 (Ct.App.1989), citing *Austin v. Conway Hosp. Inc.,* 292 S.C. 334, 339, 356 S.E.2d 153, 156 (Ct.App.1987), quoting *Rogers v. Efird's Exterminating Co., Inc.,* 284 S.C. 377, 379, 325 S.E.2d 541, 542 (1985).

 Plaintiff argues that the objective standard of the South Carolina statute should not apply to repressed recollection cases because a victim who represses memories of sexual abuse typically develops an impression, even a conviction, that she was abused, before she has an actual memory of the events. Thus, plaintiff's argument goes, she may "believe" that she has a claim at the stage of her recollection in which she has dreams or images of the abuser and the sexual acts, but she does not have notice of her potential cause of action, for statute of limitations purposes, until she perceives the events as remembered rather than imagined or having happened to someone else.

The Court is prepared to take as true, for purposes of this case, that repressed victims generally and plaintiff in particular can form an impression and conviction of having been abused by another individual as a child, well before they perceive their images as memories. We are required to assume, within reason, that the facts are as plaintiff and her experts allege them to be. *Diebold, supra.* What we decline to do is to make the leap urged by plaintiff; that is, to determine that the South Carolina Supreme Court would make an exception to the statute of limitations, or apply it differently, in personal injury cases brought by plaintiffs alleging repressed recollection.

 As discussed above, South Carolina's statute of limitations begins to run when the facts and circumstances would alert an injured person of common knowledge and experience that she might have a cause of action, not that she certainly has one. *Burgess, supra.* Plainly, it takes very little to start the clock. In *Doe v. R.D. and E.D.,* 308 S.C. 139, 417 S.E.2d 541 (1992), South Carolina's Supreme Court refused to create an exception to the statute of limitations for a plaintiff who knew he had been sexually abused but had only recently discovered the extent of his psychological injury. While that case did not involve repressed recollection, the court explicitly recognized the special problems inherent in the application of a statute of limitations to childhood sexual abuse cases and referred, almost wistfully, to other states' amendments of their statutes to accommodate adult survivors. *Id.,* 417 S.E.2d at 542–543. The court in *Doe* con-

cluded unequivocally, however, that it could not create an exception. *Id.* at 543 ("... we are without authority to amend our statute. An exception to the plain and unambiguous language of the statute of limitations must come from our legislature."). The court recently reaffirmed this position in another opinion interpreting South Carolina's statute of limitations, *Wiggins v. Edwards,* 442 S.E.2d 169 (1994).

We find that South Carolina's law on this issue is quite plain. There was no error in the trial court's declining to certify the issue to the Supreme Court of South Carolina. *See Smith v. FCX, supra.* Applying the objective standard to the facts before the court on summary judgment, particularly the plaintiff's own statement that at the times she described her experience to her therapist, on April 27 and May 4, 1989, she "had enough evidence to think that that could have occurred," we find that the statute of limitations commenced to run no later than May 4, 1989 and that plaintiff's lawsuit, commenced on May 5, 1992 was therefore time barred. Accordingly, the decision of the court below is

*AFFIRMED.*

K.K. HALL, Circuit Judge, concurring:

I concur fully in the majority opinion. I write separately only to express my view

that, in civil suits for damages based on childhood sexual abuse where the plaintiff had, for a time, allegedly suppressed all memory of the supposed abuse, courts should not allow the discovery rule to toll the statute of limitations absent corroborative evidence of both the abuse and the repression of memory of the abuse. Several courts have adopted this approach,[1] as has at least one legislature.[2]

Corroboration of the act itself could be obtained anecdotally from siblings or other household members, from a documented medical history of childhood sexual abuse,[3] or by the defendant's admission,[4] perhaps via a letter[5] or diary. Evidence of a prior criminal conviction for the abuse at issue could suffice to corroborate, as could evidence that the defendant had sexually abused others— subject, of course, to the rules regarding proof of "other bad acts."[6] Evidence that the plaintiff had actually repressed the memory of the abuse should be provided only by a psychiatrist or psychologist, and then only after a thorough clinical evaluation.

Commentators and courts alike have characterized the judiciary's struggle with repressed-memory lawsuits as an attempt to strike a balance between the legal and emotional needs of survivors of childhood sexual abuse and the public policy supporting statutes of limitations.[7] Most appear to have

---

1. *See, e.g., Meiers–Post v. Schafer,* 170 Mich.App. 174, 427 N.W.2d 606 (1988); *Nicolette v. Carey,* 751 F.Supp. 695 (W.D. Mich.1990) (applying *Schafer* ); *L.C. v. A.K.D.,* No. 05–92–02867–CV, 1994 WL 59968 (Tex.Ct.App. Mar. 1, 1994) (pending release); *Sanchez v. Archdiocese of San Antonio,* 873 S.W.2d 87 (Tex. Ct.App. 1994); *Olsen v. Hooley,* 865 P.2d 1345 (Utah 1993). *But see Lemmerman v. Fealk,* 201 Mich.App. 544, 507 N.W.2d 226 (1993) (declining to follow *Schafer* ). Several other courts have reached the same result, but their holdings have been superseded by legislative action. *E.g., Tyson v. Tyson,* 107 Wash.2d 72, 727 P.2d 226 (1986).

2. Okla. Stat. tit. xii, § 95 (West 1994) (requiring "objective, verifiable" evidence in corroboration).

3. *L.C.,* 1994 WL 59968 at *7–*8.

4. *Schafer,* 427 N.W.2d at 609.

5. *Nicolette,* 751 F.Supp. at 699–700.

6. Corroboration, though perhaps difficult or impossible in a particular case, is not the great impediment to prospective plaintiffs that some believe it to be. Harvard psychiatrist Judith Herman studied fifty-three women who reported suppressed memories of sexual abuse. Of these, thirty-nine obtained independent verification of the abuse, such as admissions by the abuser, pornographic pictures of themselves as children, or confirmation by family members. Sandra G. Boodman, *The Professional Debate Over an Emotional Issue,* Wash. Post, April 12, 1994, at Z13.

7. *See, e.g.,* Gary M. Ernsdorff & Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression,* 84 J.Crim. L. & Criminology 129, 140–41 (1993) (Suits based on childhood sexual abuse fulfill the survivor's needs to exert control, force accountability on the abuser, and free oneself of guilt or self-doubt, along with providing monetary compensation for

overlooked that such balancing inheres in the statute itself, manifest in the time allotted by the legislature to bring a particular kind of suit. To the extent that the bar of such a statute may be perceived as unfair to a sexually abused plaintiff who has, through no fault of his or her own, continuously suppressed all memory of the abuse for a time beyond the limitations period, we must remember that the unfairness imposed on a person forced to defend a stale suit also increases as time passes.

It seems to me that if we are to adjust the balance that the legislature has already set, we ought to require a degree of certitude in the justice of our action. Requiring some corroboration of the plaintiff's account of the sexual abuse can help achieve that certitude. Conversely, allowing such lawsuits to proceed absent any evidence other than the alleged victim's testimony based wholly upon newly recovered memories—the reliability of which is yet to be proven—can, in light of the stigma associated with even the accusation that an adult has sexually abused a child, be disastrous.[8] We must proceed with caution.

possible social dysfunction and/or expensive counseling. Statutes of limitations exist to protect defendants from stale claims that present difficulties in obtaining evidence and mounting an effective defense, and to encourage plaintiffs to initiate actions promptly; *L.C.*, 1994 WL 59968 at *5 ("[P]roviding defendants with a fair opportunity to defend against a lawsuit while witnesses are available and evidence is fresh in their minds ... [is] balanced ... against the injustice of cutting off people's claims before those claims are known to them.").

**8.** *See, e.g.,* Julie Tamaki, *Abuse Case to Challenge New Law on Limitations,* L.A. Times, May 15,

1994, at B1 (A California jury awards $500,000 to man, accused of sexual abuse by his daughter, in malpractice suit against two therapists who implanted false memories of the abuse in his daughter's mind. The accusations cost the plaintiff his marriage, his family, and his $400,000–a–year job.); Maggie Gallagher, *The Travesty of "Memories",* Newsday, March 7, 1994, at 38 (Sexual abuse plaintiff, as a result of his uncertainty regarding the accuracy of his suppressed memories, drops his civil suit against Cardinal Joseph Bernardin).