**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-2344

GENERAL ELECTRIC CAPITAL CORPORATION,

Plaintiff - Appellee,

versus

GLORIA RENEW; FRANKLIN RACHELS; MARGARET GILCHRIST,

Defendants - Appellants,

and

MICHAEL R. WILLIAMS,

Defendant.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Terry L. Wooten, District Judge. (CA-03-117-25-7; BK-01-10254)

Argued: September 28, 2004                Decided: December 9, 2004

Before WIDENER, KING, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Widener and Judge King concurred.

**ARGUED:** John Bush Long, TUCKER, EVERITT, LONG, BREWTON & LANIER, Augusta, Georgia, for Appellants. Brian C. Walsh, KING & SPALDING, L.L.P., Atlanta, Georgia, for Appellee. **ON BRIEF:** Louis Saul, Augusta, Georgia; Joseph E. Mitchell, III, Augusta, Georgia; James

T. Wilson, Jr., Augusta, Georgia, for Appellants.  Sarah Robinson Borders, Allen C. Winsor, KING & SPALDING, L.L.P., Atlanta, Georgia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

DUNCAN, Circuit Judge:

A group of employees of the now bankrupt Spartan International, Inc. ("Spartan") appeals an order resolving the priority of liens held on Spartan's assets. Because we agree that the employees' work at a manufacturing facility in Georgia does not entitle them to a worker's lien under South Carolina law, we affirm.

I

This proceeding focuses on the assets of Spartan, a company formerly headquartered in South Carolina and primarily engaged in textile manufacturing. Spartan operated textile mills in six locations, four in South Carolina and two in Georgia. The employees who are parties to this action worked at the King Mill manufacturing facility in Augusta, Georgia. With the decline of the domestic textile industry, Spartan became unable to meet its financial obligations and was forced to close its business.

The events leading to this litigation began in May 2001, when Spartan turned over the remainder of its assets to General Electric Capital Corporation ("GE Capital"). GE Capital had previously extended a line of credit to Spartan, secured by substantially all of Spartan's assets. Spartan was initially placed into involuntary bankruptcy in the United States Bankruptcy Court for the Southern District of Georgia, but after a jurisdictional dispute that led to

3

a change of venue, these proceedings commenced in the Bankruptcy Court for the District of South Carolina.

On August 31, 2001, while the underlying bankruptcy action was still pending in Georgia, GE Capital brought this adversary proceeding requesting a determination of the validity, priority and extent of its liens and security interests over Spartan's assets. Specifically, GE Capital sought a declaratory judgment that its lien on Spartan's accounts receivable was superior to the claimed liens of the King Mill employees relating to their former employment at the facility. In their answer and counterclaim of September 21, 2001, the employees argued that they were entitled to statutory worker's liens for outstanding overtime and vacation pay under South Carolina and Georgia law. See S.C. Code Ann. § 29-11-10 and O.C.G.A. § 44-14-380. Generally speaking, and as discussed in greater detail below, such statutes give employees a lien on the property of their employers for the payment of unpaid wages that is superior to most other liens. On February 6, 2002, the employees moved for partial summary judgment, alleging that these statutory worker's liens had priority over all other claims on Spartan's assets, including those of GE Capital.

On May 7, 2002, the Bankruptcy Court denied the motion for partial summary judgment, concluding that employees who work outside the state of South Carolina are not entitled to a lien under S.C. Code Ann. § 29-11-10 and that Spartan's accounts

4

receivable do not qualify as factory "output" under the same provision. The court later concluded that Georgia law also provides no relief for the employees, as it does not allow attachment of Spartan's accounts receivable due to their location in South Carolina. These conclusions were incorporated into the court's November 27, 2002 final order that resolved all issues in the proceeding. The employees appealed this order to the United States District Court, which affirmed the judgment on the core reasoning of the Bankruptcy Court. It is this decision we now review.

## II

The employees on appeal focus primarily on the interpretation of the South Carolina worker's lien statute. They argue that as Georgia employees of Spartan, they are entitled to a lien in South Carolina on all property located in the state under S.C. Code Ann. § 29-11-10. In addition, they contend that accounts receivable are part of a manufacturing facility's "output," thus constituting property that can be attached under that statute. Because we find that the South Carolina worker's lien statute does not apply to workers in out-of-state manufacturing facilities, it is unnecessary for us to determine the scope of the term "output" under the

5

statute.[1]

The lower courts' interpretation of S.C. Code Ann. § 29-11-10 is a question of law that we review de novo. U.S. v. Walters, 359 F.3d. 340, 343 (4th Cir. 2004). S.C. Code Ann. § 29-11-10 states that:

> All employees of factories, mines, mills, distilleries and every kind of manufacturing establishment of this State shall have a lien upon all the output of the factory, mine, mill, distillery or other manufacturing establishment by which they may be employed, either by the day or month, whether the contract be in writing or not, to the extent of such salary or wages as may be due and owing to them under the terms of their contract with the employer, such lien to take precedence over any and all other liens except the lien for municipal, State and county taxes.

By its terms, the statute creates a lien for workers who work in facilities "of this state" that is superior to all non-tax liens. The Bankruptcy and district courts interpreted this language as

---

[1] The employees also raise a new contention on appeal that was not addressed in the lower courts. They maintain that even if not entitled to a lien under South Carolina law, they are entitled to a lien under the Georgia worker's lien statute as well. O.C.G.A. § 44-14-380. They argue that this lien takes priority over any lien of GE Capital in accordance with the priority provisions of the South Carolina statute. Absent exceptional circumstances, not present here, we do not consider issues raised for the first time on appeal. Williams v. Prof'l Transp. Inc., 294 F.3d 607, 614 (4th Cir. 2002). Moreover, even assuming that the employees are entitled to a lien under the Georgia statute, they have already conceded that such a lien is subordinate to that of GE Capital under Georgia law. Their newly created "hybrid" scheme is unsupported by any authority and is especially unconvincing because the South Carolina statute does not purport to control the priority of liens created by other states. Rather, it controls only priority of liens the statute itself created for employees of mills and other manufacturing facilities located in South Carolina.

providing a territorial limitation on the statute's scope, allowing

it to provide such a lien only for employees that work for facilities within the boundaries of South Carolina.

Although the employees' argument is often less than clear, they assert that the South Carolina legislature's use of the preposition "of" in the phrase "of this state," as opposed to the phrase "in this state," is both deliberate and significant. According to the employees, the South Carolina General Assembly could easily have limited the availability of workers' liens to employees located "within" the state had it chosen to do so. The employees urge that the term "within" connotes inclusion within a state or area, whereas the phrase "of this state" is broader. The term "of," according to the employees, connotes "derivation, origin or source." Appellants' Reply Br. at 3. Under this interpretation, employees claim that the availability of a worker's lien under S.C. Code Ann. § 29-11-10 "encompasses [employees of] all corporations incorporated in South Carolina." Id. Because the statute does not specify that the property subject to the lien must be located in South Carolina, employees further contend that they could have liens on property produced at out-of-state facilities and kept outside the boundaries of South Carolina.

The employees' argument is not compelling for two reasons. The first has been definitively articulated by the Supreme Court of South Carolina. In Ex Parte First Pennsylvania Banking and Trust Co., 148 S.E.2d 373, 374 (S.C. 1966), it recognized the general

8

principle that "...no law has any effect, of its own force, beyond the territorial limits of the sovereignty from which its authority is derived." The reasons for such a rule are apparent. State legislation that attempts to have effect beyond its territorial limits raises, at the very least, numerous potential constitutional issues.

As the current version of American Jurisprudence, which the South Carolina Supreme Court cited, states:

> Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it. Thus an extraterritorial effect is not to be given statutes by implication.

73 Am. Jur. 2d Statutes § 250.

We are unwilling to infer the broad applicability of South Carolina's worker's lien statute in the manner the employees seek on the strength of the use of the preposition "of." While the employees in this case seek a lien on property that now happens to be located in South Carolina, to accept their interpretation of the statute would allow workers at out-of-state facilities owned by South Carolina corporations to have lien rights over the output of those facilities even though located outside South Carolina's

9

borders, in violation of the prohibition against state statutes having extraterritorial effect.

Second, we are also given pause by another potentially anomalous consequence of the employees' own argument. If the employees contend that South Carolina law creates liens only for employees who work for businesses incorporated in South Carolina, it would have the perverse result of applying its protection to workers having no connection with the state whatsoever, solely on the strength of their employer's incorporation. Simultaneously, South Carolina citizens employed by businesses incorporated elsewhere would be left unprotected. We are unwilling to construe section 29-11-10 in such a manner.

## III

Finally, the employees argue that rather than deciding the issue ourselves, we should certify the question as to the proper interpretation of § 29-11-10 to the South Carolina Supreme Court. This request was previously made to the district court, which denied certification holding that sufficient authority exists to make a determination as to the scope of South Carolina law. When, as here, there is no state law that directly addresses an issue, we should only certify that issue to the state court "if the available state law is clearly insufficient." Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994). We agree with the district court's determination

10

that sufficient authority exists to determine the proper interpretation of § 29-11-10 and thus similarly deny the request for certification. For the foregoing reasons, the judgment of the district court is

AFFIRMED.