**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2268**

EVANSTON INSURANCE COMPANY,

　　　　　Plaintiff - Appellant,

　　　v.

AGAPE SENIOR PRIMARY CARE, INC.; SCOTT MIDDLETON; FLOYD
CRIBBS; KEZIA NIXON,

　　　　　Defendants - Appellees,

　　　and

VICKIE WATTS, as Personal Representative of the Estate of
Dorothy Jones; MEREDITH WOFFORD; DORA ELIZABETH HANNA, by
and through her Personal Representative, King C. Hanna, Jr.,
and on behalf of a Class of Individuals Similarly Situated;
AGAPE SENIOR, LLC; JACKSON & COKER LOCUM TENENS, LLC, a/k/a
Jackson and Coker; LAFAY WALKER, as Personal Representative
of the Estate of Martha Sellers Blackwelder; AMANDA CURTIS;
PRESTON WAYNE CHANDLER, as Personal Representative of the
Estate of Mildred Louise Chandler, deceased; PATTY LARIMORE,
as Personal Representative of the Estate of Annie Larimore,
deceased; THE ESTATE OF CLARICE POTTER; AGAPE NURSING &
REHABILITATION, INC.; AGAPE ASSISTED LIVING, INC.; AGAPE
COMMUNITY HOSPICE, INC.; CAROLINAS COMMUNITY HOSPICE, INC.,

　　　　　Defendants.

Appeal from the United States District Court for the District of
South Carolina, at Columbia. Joseph F. Anderson, Jr., Senior
District Judge. (3:13-cv-00655-JFA)

Argued: October 28, 2015　　　　　Decided: January 15, 2016

Before NIEMEYER and MOTZ, Circuit Judges, and M. Hannah LAUCK, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Paul Lindsey Fields, Jr., FIELDS HOWELL, Atlanta, Georgia, for Appellant. Shaun C. Blake, ROGERS LEWIS JACKSON MANN & QUINN, LLC, Columbia, South Carolina, for Appellees. **ON BRIEF:** Gregory L. Mast, FIELDS HOWELL, Atlanta, Georgia, for Appellant. Jenkins M. Mann, ROGERS LEWIS JACKSON MANN & QUINN, LLC, Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2012, Evanston Insurance Company issued a renewed Professional Liability Insurance Policy to Agape Senior Primary Care, Inc. and certain of its employees, doctors, and nurse practitioners, including Kezia Nixon and Dr. Floyd Cribbs (collectively, "Agape"). Unbeknownst to any other employee at Agape, Ernest Osei Addo had stolen Dr. Arthur Kennedy's identity, and was fraudulently practicing medicine as an Agape "physician" ostensibly insured by Evanston. Once Addo's deceit was uncovered, Evanston sought to rescind the policy as to all participants based on Addo's fraudulent conduct and false statements on his insurance application.

Evanston and Agape sought a declaration from the United States District Court for the District of South Carolina as to whether the fraudulent misrepresentations on an application for medical malpractice insurance by one person who masqueraded as a board-certified doctor, fooling employers and patients alike, should vitiate coverage for all other innocent insureds, including the medical entity that employed him and its employees. For the reasons that follow, we affirm the district court conclusion that South Carolina law and its principles of equity demand that coverage for the innocent co-insureds remain in place.

I.

In the declaratory judgment action, both parties moved for summary judgment, largely agreeing as to the facts. Agape employs physicians and nurse practitioners, sending them to nursing homes and assisted living facilities with the Agape name. Agape uses an "integration of services" model that requires each patient to be treated by multiple physicians and nurse practitioners.

Sometime around February 2012, Agape hired a man who held himself out to be Dr. Arthur Kennedy, a South Carolina board certified physician. Neither Agape nor any of its employees knew that "Kennedy" was actually Ernest Osei Addo, who was not a South Carolina board-certified physician. Addo had stolen the identity of Dr. Kennedy, a former friend of Addo who was out of the country during Addo's fraudulent conduct at Agape. Using Dr. Kennedy's identity, Addo had obtained a South Carolina driver's license with his own photo and previously had gained employment as a physician with the South Carolina Department of Mental Health.

In August 2012, approximately six months after hiring Addo, Agape learned of the fraud after police arrested Addo and notified Agape of Addo's true identity. A federal court in South Carolina sentenced Addo to two years of imprisonment following his conviction for aggravated identity theft in 2014.

4

All parties agree that Addo fraudulently portrayed himself as Dr. Kennedy and that Addo's conduct was dishonest, illegal, and intentional.

Prior to Addo's criminal conviction, in 2011, Evanston issued Physicians, Surgeons, Dentists and Podiatrists Professional Liability Insurance Policy No. MM-820866 for the policy period August 1, 2011 to August 1, 2012 (the "First Policy"). On February 11, 2012, Addo filled out an individual application for insurance through Evanston, representing himself to be Dr. Kennedy and board-certified in family medicine. Evanston had no other information regarding "Kennedy" except the application. After receiving Addo's application, Evanston issued Endorsement 10-10, adding "Kennedy" to the First Policy and charging an additional $4,000 premium for "Kennedy."

On July 15, 2012, all applicants, including the individual physicians, Addo, and Agape, submitted separate renewal applications. Thereafter, Evanston issued Policy No. MM-822351 (the "Renewal Policy") for the period from August 1, 2012 to August 1, 2013. Had Addo's identity been disclosed, Evanston would not have issued Endorsement 10-10 or the Renewal Policy.

The First Policy and the Renewal Policy were identical in relevant part, with the exception of the addition of Kennedy's name to the list of insured physicians to the Renewal Policy. The Policies provided for two different coverages: "Coverage A:

5

Individual Liability Coverage" ("Coverage A") and "Coverage B: Association, Corporation or Partnership Liability Coverage" ("Coverage B"). Coverage A related to a list of individual physicians, each of whom applied for insurance separately. Coverage B applied to Agape and certain of its employees.

Three lawsuits have been filed against Agape that potentially relate to the declaratory judgment case on appeal.[1] Evanston currently defends Agape in the lawsuits, all of which proceed in South Carolina Courts of Common Pleas.[2]

---

[1] Other entities have given notice of intent to file suit or sent letters suggesting they might sue.

[2] The relevant suits are:

(1) The Hanna Class Action Lawsuit: This class action lawsuit was filed against Agape, Scott Middleton, Agape's CEO, and Jackson & Coker Locum Tenens, LLC ("Jackson") in the Court of Common Pleas for Richland County, South Carolina. Jackson operates as a physician recruitment and staffing agency and recommended Addo's employment to Agape. Defendants removed the action to the United States District Court for the District of South Carolina, Columbia Division. Hanna v. Agape Sr. LLC, No. 3:12cv2872 (D.S.C. filed Oct. 4, 2012) (Anderson, J.).

In February 2014, the Hanna plaintiffs filed their first amended complaint raising eight causes of action for negligent conduct stemming from Agape and Middleton's hiring of Addo. The lawsuit does not allege medical malpractice by any doctors other than Addo. The district court remanded the action to state court before a second amended complaint was filed in the Class Action Lawsuit. Hanna, No. 3:12cv2872 (D.S.C. Jan. 20, 2015) (order granting motion to remand) (Anderson, J.).

(2) The Larimore Lawsuit: The Larimore estate filed a complaint against Agape, two nursing homes, and Dr. Cribbs. The complaint contains two counts of medical malpractice and (Continued)

6

After the filing of the Class Action Lawsuit, Evanston brought a separate declaratory action against Agape in the United States District Court for the District of South Carolina, Columbia Division.[3]  Evanston sought a "determination as to whether it has a duty to defend and/or indemnify the parties who have been named in underlying lawsuits (both filed and unfiled) against [Agape]."  Evanston filed a motion for summary judgment, seeking a ruling "that the [Renewal Policy] does not afford coverage for the underlying suits and that [Evanston] is not required to defend or indemnify."  Agape filed a cross-motion for summary judgment, requesting a ruling "that the [Renewal Policy] does afford coverage for the claims made in the underlying actions."

The district court issued its amended order on the cross motions for summary judgment in October 2014.  The district court noted that the Supreme Court of South Carolina held in McCracken v. Gov't Emps. Ins. Co., 325 S.E.2d 62, 64 (S.C.

---

highlights poor care by Dr. Cribbs, Addo, and Nurse Practitioners Nixon and Tonja Gantt.

(3) The Curtis Lawsuit:  In August 2013, Amanda Curtis filed suit against Agape and Jackson.  The complaint alleges assault and battery; defamation, libel, and slander; and, negligence based on Agape's hiring and retention of Addo, who treated Ms. Curtis.

[3] Judge Anderson presided over both the Class Action Lawsuit and the present case.

7

1985), that "in the absence of any statute or specific policy language denying coverage to a co-insured for the arson of another co-insured, the innocent co-insured shall be entitled to recover his or her share of the insurance proceeds." McCracken, 325 S.E.2d at 64. Without express guidance from the Supreme Court of South Carolina as to whether the innocent co-insured doctrine applied outside of the arson context, or whether the fraudulent application by one insured voided the contract ab initio as to others, the district court addressed this novel circumstance within the bounds of what would be South Carolina law. Private Mortg. Inv. Servs., Inc. v. Hotel and Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002) (citation omitted); Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974).

The court ruled that the Renewal Policy was void as to Addo because of his fraudulent misrepresentations. The court did not "impute" Addo's conduct to Agape, finding that (1) Addo applied separately for the Policies and Agape had no knowledge of his fraud; (2) the Renewal Policy demonstrated an intent to provide separate insurance coverage for the "co-insureds" and thus the Renewal Policy was not void ab initio; (3) Exclusion A did not bar coverage of the other named insureds for malpractice or personal injury committed in violation of any law or ordinance unless it was committed by or at the direction of "the Insured";

8

(4) Endorsement 5, read in conjunction with Endorsement 7, was ambiguous and should be construed to afford the maximum coverage, meaning that not only were the named physicians and nurses covered by the Renewal Policy but also any employee or volunteer; (5) the Renewal Policy did not provide Agape coverage for its own negligent acts; and, (6) the "Medical Director Exclusion" barred coverage for any insured while acting as medical director, but the exclusion could not be applied to a specific case without more factual development.[4]  Evanston filed the present appeal.

## II.

This Court reviews a district court's grant of summary judgment de novo.  Roe v. Doe, 28 F.3d 404, 406 (4th Cir. 1994). Summary judgment should be granted if, after reviewing all the pleadings, depositions, affidavits, and other documents submitted by the parties, the Court finds that the moving party is entitled to judgment as a matter of law.  Id. at 406-07 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  In evaluating the evidence, the court must draw all reasonable inferences in favor of the non-moving party.  Id. at 407.  "Similarly, in our de novo review, this court must draw all reasonable inferences

---

[4] Evanston did not challenge this ruling on appeal.

in favor of the appellant." Id. (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

The Supreme Court of South Carolina applies the "general rules of contract construction" to construe insurance policies. B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999) (citations omitted). "Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." Williams v. Gov't Empls. Ins. Co. (GEICO), 762 S.E.2d 705, 710 (S.C. 2014) (quoting Diamond State Ins. Co. v. Homestead Indus., Inc., 456 S.E.2d 912, 915 (S.C. 1995)).

A common general contract principle "allows an injured party to void a contract when that party's assent to the bargain is induced by the fraudulent or material misrepresentation of the other contracting party, and the injured party relied on the misrepresentation in question." Robert H. Jerry, II & Douglas R. Richmond, Understanding Insurance Law, 738 (5th ed. 2012). Some states, including South Carolina, statutorily modify the traditional contract principle in the insurance context by requiring the insured party to have intended to defraud the insurance company. Id.; see, e.g., S.C. Code § 38-71-40 (requiring intent to defraud in order to rescind accident and health insurance policies).

10

"Rescission is an equitable remedy that attempts to undo a contract from the beginning as if the contract had never existed." ZAN, LLC v. Ripley Cove, LLC, 751 S.E.2d 664, 669 (S.C. 2013) (citation omitted). In order to completely rescind a contract, the plaintiff must show a breach that is "so substantial and fundamental as to defeat the purpose of the contract." Id. Thus, "[r]escission will not be granted for a minor or casual breach of a contract, but only for those breaches which defeat the object of the contracting parties." Id. (citations omitted).

## III.

### A.

Evanston contends that the innocent co-insured doctrine does not apply, and that "principles of general contract law regarding fraudulent procurement support rescission of the entire policy." We disagree. South Carolina law and principles of equity weigh in favor of allowing coverage for the innocent co-insured parties, who are the individual doctors, nurses, and Agape. South Carolina law disfavors rescission against the insured. In particular, under South Carolina law, three factors tip the equity scales in favor of Agape: (1) as the insurer and drafter, Evanston could have included forfeiture language in the policy; (2) neither Agape nor any of its employees had any knowledge of Addo's fraud, rendering them "innocent" under South

11

Carolina law; and, (3) the public interest would not be served through rescission.

South Carolina construes insurance policies "liberally in favor of the insured and strictly against the insurer." USAA Prop. and Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 797 (S.C. 2008) (citation omitted). In the face of an action for rescission, the Supreme Court of South Carolina repeatedly confirms that "[f]orfeitures of insurance contracts are not favored." Puckett v. State Farm Gen. Ins. Co., 444 S.E.2d 523, 524 (S.C. 1994); Johnson v. S. State Ins. Co., 341 S.E.2d 793, 794 (S.C. 1986); Small v. Coastal States Life Ins. Co., 128 S.E.2d 175, 177 (S.C. 1962).

Within this context, the Court addresses the issues in this case. First, the Supreme Court of South Carolina in McCracken noted that insurers, as drafters of insurance policies, can include express policy language supporting their position to rescind for the intentional misrepresentation of any applicant. 325 S.E.2d at 64. In McCracken, the South Carolina Supreme Court held that an innocent wife could recover insurance proceeds notwithstanding her husband's arson of their home. Id.; see also Nationwide Mut. Ins. Co. v. Comm'l Bank, 479 S.E.2d 524, 527 (S.C. Ct. App. 1996) (distinguishing McCracken because of its emphasis on the absence of language denying payment when insured engaged in fraud). Evanston, as the

12

insurer and drafter, could easily have included provisions limiting coverage in the face of fraud by one discrete applicant. It did not do so. The district court correctly noted that South Carolina and other states emphasize the existence of such provisions, when they are present, in order to limit coverage. See Evanston Ins. Co. v. Watts, 52 F. Supp. 3d 761, 769 (D.S.C. 2014) (citing K & W Builders, Inc. v. Merchs. & Bus. Men's Mut. Ins. Co., 495 S.E.2d 473, 477 (Va. 1998); S.C. Farm Bureau Mut. Ins. Co. v. Kelly, 547 S.E.2d 871, 876 (S.C. Ct. App. 2001)).

Second, given the reasoning articulated in McCracken, the district court did not err in its forecast that South Carolina would extend the innocent co-insured doctrine beyond the context of arson and into other areas of insurance. McCracken looked to the parties' respective responsibility for bad acts, explicitly rejecting a requirement that the court look to the relative obligations of the parties. Instead, the court adopted the innocent co-insured doctrine that examines the liabilities of the parties for the fraudulent act. See McCracken, 325 S.E.2d at 63–64. South Carolina statutory law reinforces the view that

the insured usually must exhibit some <u>fault</u> in order to support vitiation of an insurance policy.[5]

Finally, public policy considerations—appropriate to weigh in this equitable action—reinforce that the district court arrived at the proper outcome under South Carolina law. Equity cannot demand that the actions of one corrupt applicant, who conned Agape and Evanston alike, deprive the innocent insureds of the benefit of their contract. Agape and its employees separately applied for medical malpractice insurance in good faith, and they would be left without such insurance through no fault of their own. Evanston accepted individual premiums as to each insured and seemingly spread the risk accordingly. Further, and perhaps more important in an equitable determination, rescission would leave the public essentially unprotected on matters of medical malpractice brought against

---

[5] Under South Carolina statutory law, an accident or health insurance policy is not void <u>ab initio</u> despite a material misrepresentation made in the application unless "the false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer." S.C. Code § 38-71-40. South Carolina common law places the burden on the insurer to show, by clear and convincing evidence, that: (1) the statements made on the application were untrue; (2) the applicant knew the statements were false; (3) the statements were material to the risk; (4) the insurer relied on the false statements; and, (5) the statements were made with the intent to deceive and defraud the company. <u>Lanham v. Blue Cross & Blue Shield of S.C., Inc.</u>, 563 S.E.2d 331, 334 (S.C. 2002).

14

every other Agape employee.  See First Am. Title Ins. Co. v. Lawson, 827 A.2d 230, 240 (N.J. 2003).

The district court faced a novel application of the innocent co-insured doctrine otherwise employed by South Carolina courts. For the reasons stated above, the district court did not err when it concluded that South Carolina would not allow rescission under the facts of this case.  Accordingly, the Court will affirm the district court's holding that the Renewal Policy is not void ab initio.

B.

Evanston next argues that, if the Renewal Policy is not void ab initio, the district court erred in allowing coverage of claims for "administrative failures," as opposed to limiting coverage to claims for "medical malpractice or personal injury."[6] Evanston fundamentally misunderstands the district court's decision.

The district court plainly held that the policy provided coverage to Agape "for the acts and omissions of all Coverage A Named Insureds and Coverage B Named Insureds, to the extent such individuals were acting within the scope of their duties on behalf of [Agape.]"  Nowhere did the district court's decision

---

[6] No party disputes that "Dr. Kennedy" and Addo, whose name appears nowhere on the insurance policy, lack coverage.

15

extend such coverage to Agape for its own administrative failures. Indeed, the district court observed, albeit in a footnote, that the policy did <u>not</u> "provide coverage to [Agape] for any of its own negligent acts." A reading of this malpractice policy to exclude coverage for Agape's own negligent administrative acts such as negligent hiring and retention is not in error. Accordingly, the Court affirms the district court's interpretation of its finding of coverage under the policy.

Evanston further asserts that the district court improperly construed Exclusion A, which states:

This policy does not apply to:

A. any Malpractice or Personal Injury committed in violation of any law or ordinance; to any Claim based upon or arising out of any dishonest, fraudulent, criminal, malicious, knowingly, wrongful, deliberate, or intentional acts, errors or omissions committed by or at the direction of the Insured . . . .

Additional exclusions, lettered B through S, followed Exclusion A. Evanston avers that the district court failed to apply this exclusion and instead allowed coverage for claims against Named Insureds arising from the acts and omissions of Addo. Evanston again misinterprets the district court's decision.

The district court correctly concluded that "all other Coverage A Named Insureds are entitled to coverage, to the extent a claim exists that would trigger their coverage under

16

the [Renewal Policy]." As discussed above, the phrase "all other Coverage A Named Insureds" does not include Addo or Kennedy. The district court noted that coverage extended only to claims arising from "the acts and omissions of all Coverage A Named Insureds and Coverage B Named Insureds, to the extent such individuals were acting within the scope of their duties on behalf of [Agape.]" In sum, the district court did not hold that coverage extends to claims arising from Addo's acts and omissions.[7] Accordingly, the Court affirms the district court's interpretation of Exclusion A.

Finally, Evanston argues that the district court failed to apply its rulings to each individual lawsuit and potential lawsuit presented to the court, contending that the district court's order has caused more disputes. "It is well settled that an insurer's duty to defend is based on the allegations of the underlying complaint." B.L.G. Enters., 514 S.E.2d at 330. "In examining the complaint, a court must look beyond the labels describing the acts to the acts themselves which form the basis of the claim against the insurer." Collins Holding Corp. v. Wausau Underwriters Ins. Co., 666 S.E.2d 897, 899 (S.C. 2008).

---

[7] Indeed, Agape conceded that, as a result of Exclusion A, it lacks coverage "for a claim where the sole basis of liability against [Agape] is vicarious liability for the actions or omissions of Addo."

17

The record shows the existence of three filed lawsuits: the Class Action Lawsuit, the Larimore Lawsuit, and the Curtis Lawsuit. However, none of the parties in interest in these suits were brought before the district court. See A.S. Abell Co. v. Chell, 412 F.2d 712, 717 (4th Cir. 1969) (noting that the district court may withhold declaratory relief for nonjoinder of interested parties). Accordingly, the district court did not err when it made no declarations regarding a duty to defend against lawsuits not properly before it.

IV.

For the foregoing reasons, the district court correctly interpreted the policy and committed no error when it applied the innocent co-insured doctrine to the novel circumstances of this case. South Carolina law and principles of equity demand that fraudulent misrepresentations on an application for medical malpractice insurance by a person posing as a doctor should not vitiate the insurance policy as to his or her innocent employer and fellow employees.

Accordingly, the judgment of the district court is

AFFIRMED.